EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ ANTONIO NEGRÓN RAMOS, acusado y apelante.

Número 15542.

*Sometido:* 5 de marzo de 1954. *Resuelto:* 13 de abril de 1954.

---

*Gilberto R. Padró Díaz,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

José Antonio Negrón Ramos fué acusado de dos infracciones al artículo 81 de la "Ley de Espíritus y Bebidas Alcohólicas", [1] consistentes en que en 10 de enero de 1953 tenía en su poder y posesión, en su residencia sita en el barrio Garrapatas de Barceloneta, Puerto Rico, dos alambiques compuestos de drones, serpentinas de cobre, tubos de goma y pipas enfriadoras, sin haberlos inscrito en la oficina del Tesorero de Puerto Rico. [2] Oportunamente el acusado presentó una moción solicitando la supresión de evidencia que a juicio suyo fué ilegalmente obtenida. Discutida esta moción el tribunal a quo la declaró sin lugar y vistos entonces los casos en sus

---

[1] Ley núm. 6 de 30 de junio de 1936 ((2) pág. 45), según fué enmendada por la Ley núm. 117 de 27 de abril de 1949 ((1) pág. 303).

[2] Se presentaron dos acusaciones contra el acusado, o sea, una por cada uno de los alambiques ocupádosle.

méritos el acusado fué declarado culpable y sentenciado a cumplir tres meses de cárcel por cada infracción, disponiéndose que tales penas se cumplirían concurrentemente.

En esta apelación el acusado imputa a la corte sentenciadora la comisión de los siguientes errores:

"1. El tribunal a quo cometió error al declarar sin lugar la Moción de Supresión de Evidencia Ilegalmente Obtenida, radicada por el apelante.

"2. El tribunal a quo cometió error al admitir en evidencia, la evidencia ilegalmente obtenida.

"3. El tribunal a quo cometió error al determinar que la prueba del Estado era suficiente en derecho para sostener las denuncias."

■■ Los dos primeros errores están predicados en la insuficiencia de la declaración jurada que sirvió de base para la expedición de la orden de allanamiento de la residencia del apelante. Arguye éste que como la posesión de los artículos descritos en dicha declaración jurada no constituyen delito, el juez que expidió la orden de allanamiento carecía de base para determinar la existencia de causa probable. No tiene razón. El Teniente de la Policía Estatal, Eduardo Rivera, hace constar en la susodicha declaración, refiriéndose al acusado-apelante, "Que en su casa residencia del mismo sitio Garrapatas de Barceloneta, en sus alrededores por la parte sur y este manipulaba dos alambiques desmontados de cobre y al llegar a la referida casa ví muchos drones vacíos y otros llenos de melaza preparada para la fabricación clandestina de ron cañita, . . . . . Que los drones, las serpentinas y los tubos de goma, forman los aparatos—alambiques con las mieles preparadas para la fabricación de ron cañita clandestino; que tiene como dueño bajo su gobierno sin pagar los impuestos correspondientes de Rentas Internas al Tesorero de Puerto Rico . . . . Que de acuerdo con esta declaración suplico al Hon. Juez de Paz de Primera Instancia de Barceloneta, ordene la correspondiente orden de allanamiento para registrar la casa del querellado José Antonio Negrón Ramos, donde

guarda en el interior de la casa y sus alrededores todo lo que se está utilizando para la fabricación de bebidas alcohólicas sin pagar los impuestos de Rentas Internas . . . . ."

Obviamente en dicha declaración se describen con certeza objetos cuya posesión está prohibida por ley a menos que los mismos se inscriban en la oficina del Tesorero de Puerto Rico, a saber: dos alambiques desmontados de los que corrientemente se usan para la fabricación clandestina de ron cañita. Un deponente no necesita ser un perito para que pueda declarar sobre la existencia de tales alambiques. *Pueblo* v. *Negrón,* 29 D.P.R. 55; *Pueblo* v. *Rivera,* 32 D.P.R. 73 y *Pueblo* v. *Millán,* 33 D.P.R. 921. Concluímos por tanto, que dicha declaración jurada es suficiente, y que en su consecuencia la orden de allanamiento y el registro practicado en la residencia del apelante, no habiendo sido atacados por ningún otro motivo, son legales y admisibles en evidencia los objetos y artículos ocupados. No se cometieron los primeros dos errores.

█■ El tercer error se dirige a la suficiencia de la prueba. Es cierto que el fiscal no probó en el juicio que los dos alambiques ocupados al acusado no estaban inscritos en la oficina del Tesorero. Repetidamente hemos resuelto que una vez demostrado que el alambique se ocupó en poder del acusado, es a éste a quien corresponde probar que lo tenía inscrito en la Tesorería de Puerto Rico y que El Pueblo no está obligado a probar que el acusado no lo tenía inscrito. *Pueblo* v. *Figueroa,* 58 D.P.R. 673; *Pueblo* v. *Millán,* 33 D.P.R. 921; *Pueblo* v. *Hernández,* 30 D.P.R. 368. No podemos convenir con el apelante en que la doctrina sentada en estos casos ha sido tácitamente revocada en el caso de *Pueblo* v. *Rivera,* 75 D.P.R. 425. Lo que resolvimos en este último caso fué que una acusación bajo los artículos 7 y 8 de la Ley núm. 17 de 1951 (Leyes de 1950–51, pág. 427) por portar, conducir o transportar un arma de fuego, ya esté cargada o descargada, o por portar, conducir o transportar al mismo tiempo municiones que puedan usarse para dispararla, debe alegar, como re-

quisito esencial y para que pueda imputar un delito prima facie, que el acusado no tiene licencia expedida para portar el arma en cuestión. Al así resolverlo seguimos una vieja doctrina al efecto de que si la excepción ha sido incorporada a la definición del delito de manera tan inseparable que una acusación que la omita deja de exponer uno de los elementos del delito, entonces es indispensable que la acusación niegue la excepción. Véase *Pueblo* v. *Cortés*, 24 D.P.R. 208; *Pueblo* v. *Avilés*, 54 D.P.R. 272; *Pueblo* v. *Muñoz*, 57 D.P.R. 218; *Pueblo* v. *Ramírez*, 65 D.P.R. 680. El problema envuelto en dicho caso era por tanto, uno de alegaciones y no de prueba. En una acusación bajo el artículo 81 de la Ley de Espíritus y Bebidas Alcohólicas[3] es necesario alegar, para que aduzca hechos constitutivos de delito, que el acusado no tenía inscrito el alambique en la oficina del Tesorero. Según hemos ya resuelto en ocasiones anteriores, este hecho no tiene que ser probado en juicio.

██ Sostiene el apelante que la doctrina seguida en los casos de *Figueroa*, *Millán* y *Hernández*, supra, viola el derecho constitucional del acusado a gozar de la presunción de inocencia en los procesos criminales. Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. Este derecho no es nuevo en nuestro sistema penal. El Código de Enjuiciamiento Criminal, aprobado en marzo 1 de 1902, dispone en su artículo 236 que en todo proceso criminal, se considerará inocente al acusado mientras no se le pruebe lo contrario, y en caso de existir duda razonable o fun-

---

[3] Dicho artículo 81 dispone lo siguiente:

"Artículo 81.—Toda persona que tenga en su poder o custodia o a su disposición en alguna forma, bien sea como dueño, arrendatario, depositario, o como guardián o en cualquier forma, un alambique montado o desmontado, que no esté inscrito en la oficina del Tesorero; o que dejare de inscribir un alambique que tenga en su poder, en calidad de depósito, bajo su custodia, o a su disposición en alguna forma; o que impida, o estorbe la libre inspección del mismo a un agente de rentas internas, será culpable de un delito menos grave (*misdemeanor*). El Tesorero o sus agentes de rentas internas embargarán todo alambique que no esté inscrito, y lo confiscarán y venderán a beneficio de El Pueblo de Puerto Rico, o si lo estimaren conveniente, lo destruirán."

dada acerca de su culpabilidad, se le absolverá. De suerte que al resolver los casos de *Figueroa, Millán* y *Hernández*, tuvimos en cuentas el precepto legal antes citado. El principio que establece la presunción de inocencia a favor del acusado es una vieja máxima en la administración del derecho penal angloamericano. Las cortes de los Estados Unidos, tanto federales como estatales han aceptado sin disputa que esa es la ley. (⁴) Existe sin embargo otro principio, aceptado generalmente por los tribunales americanos, al efecto de que no incumbe al fiscal aducir prueba afirmativa para sostener una alegación negativa cuya veracidad queda razonablemente indicada por las circunstancias establecidas y que de ser incierta puede fácilmente ser contradicha mediante el ofrecimiento de prueba documental o de otra índole que probablemente está en poder del acusado o bajo su dominio. *Rossi* v. *United States*, 289 U. S. 89, citado con aprobación en *United States* v. *Fleischman*, 339 U. S. 349; IX Wigmore *On Evidence*, pág. 275, sección 2486 y casos citados al escolio 3; Underhill's *Criminal Evidence* (cuarta edición) pág. 1434, sección 52 y casos citados al escolio 34 y pág. 1434, sección 789.

(¹) La presunción de inocencia fué definida originalmente por el Tribunal Supremo de los Estados Unidos, en *Coffin* v. *United States*, 156 U. S. 432, en la siguiente forma:

"En la actualidad, la presunción de inocencia es una conclusión derivada de la ley en favor del ciudadano, en virtud de la cual, al ser juzgado bajo una acusación criminal, debe ser exonerado a menos que se le pruebe su culpabilidad. En otras palabras, esta presunción es un medio dé prueba que, creado por la ley en favor de un acusado, establece su inocencia hasta tanto se presente evidencia bastante para destruir la prueba así creada por la ley."

Esta definición, en tanto consideraba que la presunción de inocencia era un *medio de prueba*, fué ratificada aparentemente en *Allen* v. *United States*, 164 U. S. 492. Aunque el caso de *Coffin* influyó en las decisiones de muchas cortes, otras lo repudiaron. Además, el concepto de que la presunción de inocencia era prueba a favor del acusado, fué criticada severamente por los tratadistas. El propio Tribunal Supremo Nacional, se apartó de su definición y en *Agnew* v. *United States*, 165 U. S. 36, al referirse al concepto "una presunción legal debe considerarse como prueba", dijo que dicho concepto tenía la tendencia de conducir a conclusiones erróneas. Posteriormente en *Holt* v. *United States*, 218 U. S. 245, se sostuvo la negativa de la corte sentenciadora a trasmitir al jurado una instrucción en el sentido de que la presunción de inocencia era prueba a favor del acusado.

La aplicabilidad de este principio al caso del apelante es inescapable, en vista especialmente del estado de nuestra legislación. El artículo 30 de la Ley de Espíritus y Bebidas Alcohólicas dispone: "Todo destilador se proveerá, por su cuenta, de un almacén situado en el local de su destilería y formando parte de la misma . . . .; pero *ninguna casa de vivienda* se usará para tales fines . . . . . ." (⁵)

Por tanto, al apelante le era imposible inscribir legalmente en la oficina del Tesorero, los dos alambiques ocupádosle en su residencia. No venía obligado el fiscal a probar la falta de inscripción de dichos aparatos. *Rossi* v. *United States*, supra.

*Deben confirmarse las sentencias apeladas.*

---

(⁵) El artículo 3 (6) de la Ley de Bebidas define "destilador" en la siguiente forma:

"(6) *Destilador:* es toda persona que elabore espíritus destilados o que por cualquier procedimiento de destilación o evaporación separe espíritus, ya sean puros o impuros, de cualquier substancia fermentada o no, o que, estando en posesión o usando de un alambique, haga, prepare, o esté en posesión de cualquier substancia propia para la destilación."