EL PUEBLO DE PUERTO RICO en interés del menor M.G.R., querellado y apelante.

Número: O-79-430     Resuelto: 11 de abril de 1980

*Manuel J. Vera Vera*, de Servicios Legales de Puerto Rico, Inc., abogado del apelante; *Héctor A. Colón Cruz, Procurador General*, y *Lirio Bernal, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El menor M.G.R. conducía con licencia de aprendiz un automóvil entre Aguada y Rincón el 29 diciembre, 1978 a las 11:45 P.M., y en una curva estrecha chocó contra árboles de mango, accidente en que perdió la vida su acompañante José Ruiz Chaparro, de 19 años de edad. Fue intervenido por la Policía hallándose en el dispensario médico de Rincón y llevado en vehículo oficial de la patrulla de carreteras al cuartel de la Policía de Aguadilla a presencia del fiscal de turno donde le fueron hechas las advertencias de ley, leídas de una tarjeta que provee la Policía y se procedió a hacerle la prueba de aliento (alcoholímetro), a la que se sometió voluntariamente, dando un resultado de trece (13) centésimas del uno por ciento de alcohol en la sangre.

Se formularon querellas contra dicho menor M.G.R. por homicidio involuntario, guiar en estado de embriaguez y no estar acompañado de conductor autorizado. La Sala de Asuntos de Menores de Aguadilla lo absolvió perentoriamente del cargo de homicidio y lo halló incurso en falta en las otras dos querellas, dejándolo bajo la custodia de sus padres bajo la supervisión por seis meses de la Oficina de Relaciones de Familia del Tribunal. Dicha decisión ha sido apelada por el menor quien en su escrito de apelación y alegato alega error de la sala de instancia, (*1*) al denegar la moción de supresión

de evidencia y admitir la prueba de aliento que alega fue obtenida en violación de sus derechos constitucionales; (*2*) al apreciar la prueba y considerarla suficiente para establecer más allá de duda razonable la imputación de guiar en estado de embriaguez; y (*3*) insuficiencia de prueba en el caso por conducir sin estar acompañado de conductor autorizado.

Hemos leído el alegato del apelante y el informe del Procurador General y procedemos a resolver el recurso.

▮ (*1*) y (*2*). El apelante elabora un argumento de evidencia ilegalmente obtenida predicado en la teoría de que en todos los casos de toma de muestra para análisis químico ha de mediar obligatoriamente una previa *prueba inicial* del aliento, y que no habiéndose practicado la misma en este caso, no es admisible en evidencia el resultado del análisis posterior. No hay tal obligatoriedad de condición precedente. El Art. 5.803(b) de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1043(b), dispone que "[c]ualquier agente del orden público deberá requerir de cualquier conductor que se someta a cualesquiera de dichos análisis químicos [de sangre, aliento o cualquier otra substancia de su cuerpo excepto la orina], después de haberle detenido y arrestado por tener motivos fundados para creer que dicha persona conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes ..."; y el inciso (c) siguiente dice que "... [e]n adición a lo dispuesto en el inciso (b) cualquier agente del orden público podrá requerirle a cualquier persona que esté conduciendo o haciendo funcionar un vehículo de motor que se someta a una prueba inicial del aliento a ser practicada en el lugar de la detención si dicho agente: (1) Tiene causa o motivo razonable para sospechar que la persona ha ingerido alcohol; o (2) Si ocurre un accidente y la persona se hallaba conduciendo uno de los vehículos involucrados en el accidente. Si el resultado de la prueba inicial del aliento indicare una posible concentración de diez (10) centésimas o más, de uno (1) por ciento de alcohol por volumen el agente del orden público deberá requerirle al conductor que se someta a un análisis posterior

de la sangre o aliento, el resultado del cual podrá ser utilizado para demostrar que la persona ha estado conduciendo un vehículo de motor en violación a la sec. 1041 o el inciso (b) de la sec. 1042 de este título".

La lectura del estatuto nos indica que los incisos (b) y (c) citados gobiernan situaciones distintas: la primera, cuando el agente detiene y arresta al conductor fuera del vehículo, por lo que no ha conducido o hecho funcionar el mismo en su presencia; y, la segunda, cuando el agente detiene a un conductor de quien sospecha que ha ingerido alcohol, o si personado el agente en el lugar del accidente encuentra allí el conductor o los conductores involucrados. Aun así la ley cuidadosamente usa el vocablo "podrá" para darle carácter potestativo o discrecional a la práctica de dicha prueba inicial. ([1]) No fue la intención del legislador complicar al punto de casi exigir dos pruebas en vez de una si el propósito era enfrentar la creciente incidencia de conductores ebrios en las vías públicas del país. Más que como requisito previo, el legislador proveyó la alternativa de dicha prueba inicial en el lugar de la detención para los casos en que la persona intervenida no muestre en su condición y comportamiento general con apreciable relieve los elementos integrantes de causa o motivo razonable para sospechar que ha ingerido alcohol. ([2])

---

([1]) La prueba estableció que los carros de patrulla de la Policía no disponen del alcoholímetro o equipo similar por lo que resulta imposible llevar a cabo esta prueba inicial en el lugar de la detención.

([2]) Así se desprende del Informe Conjunto de las Comisiones de Transportación y Obras Públicas y de lo Jurídico Penal de la Cámara de Representantes que precedió a la Ley Núm. 35 de 4 junio, 1975, enmendatoria de la referida Sec. 5.803, que en lo pertinente dice:

". . . Mediante el examen, se evitaría que el ciudadano detenido sea sometido al procedimiento, muchas veces innecesario, de tener que acudir a un hospital para que le sea practicada la prueba de sangre.

"Con la autorización que por este medio se concede, el agente del orden público podrá practicar la prueba del aliento de una forma sencilla y rápida. Si dicho examen de aliento muestra indicio alguno de que la persona estaba conduciendo con un contenido de alcohol en la sangre mayor al autorizado por la Sección 5-801, entonces será llevado al lugar más cercano para someterse a la prueba definitiva de

En el momento en que el policía detuvo y arrestó al joven apelante en el Dispensario de Rincón notó en él aliento alcohólico, y sabía que conducía el vehículo que se había estrellado contra los árboles saliéndose de la vía de rodaje; que la colisión fue de tal grado que había causado graves lesiones o la muerte al amigo del conductor; que el suceso se produce a la medianoche dos días antes de Año Nuevo, siendo ambos ocupantes del automóvil jóvenes menores de edad; que el menor le informó al agente que estaba paseando con su amigo, que se habían tomado unas cervezas y que venían o iban a jugar billar a un barrio de Aguada (E.N.P., pág. 5); todos estos detalles inducen a la creencia fundada de que el apelante conducía bajo los efectos de bebidas embriagantes. A tenor del inciso (b) antes citado era simple obligación del agente requerir del apelante que se sometiera al análisis químico, sin vacilación alguna. En el procedimiento no se lastimó ningún derecho del acusado, y siendo admisible en evidencia el resultado de la prueba química que demostró un nivel de alcohol de .0013 en la sangre, sin que se derrotara la presunción de embriaguez afirmada por el Art. 5.801(b)(2) de la Ley, 9 L.P.R.A. sec. 1041(b)(2), la prueba en la vista sostiene la decisión del juzgador.

La información obtenida por el agente del menor al intervenirlo en Rincón se mantuvo dentro del ámbito permisible de preguntas hechas en la investigación rutinaria de un accidente de circulación, especialmente si el cuadro general de hechos sugiere el factor de conducción en estado de embriaguez. *Pueblo* v. *Tribunal Superior*, 97 D.P.R. 199 (1969). No se violó la garantía constitucional contra autoincriminación que destacó la doctrina de *Escobedo* v. *Illinois*, 378 U.S. 478 (1964); *Miranda* v. *Arizona*, 384 U.S. 436 (1966); y *Rivera Escuté* v. *Jefe de Penitenciaría*, 92 D.P.R. 765 (1965). Al hacer dichas manifestaciones el menor no se encontraba

la sangre o del aliento. Por el contrario, si el análisis inicial demuestra que la persona no estaba conduciendo en violación a lo dispuesto en la Sección 5-801 ésta se dejará en libertad, evitándole así múltiples inconvenientes."

bajo arresto o bajo la custodia de autoridad competente. *Pueblo* v. *Beltrán Santiago*, 97 D.P.R. 92 (1969).

■ (*3*). Tampoco erró la sala de instancia al estimar suficiente para su determinación de incurso, la prueba en el cargo por infracción del Art. 3.105 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 655, cuyo inciso (d) exige que "[t]oda persona a quien se le conceda una licencia de aprendizaje podrá conducir un vehículo de motor por las vías públicas, sujeto a la reglamentación que a tal efecto estableciere el Secretario y estará obligada a tener a su lado inmediato y contiguo, cuando las características del vehículo lo permitan, una persona debidamente autorizada para conducir tal tipo de vehículo de motor". Establecido por la prueba de cargo que el apelante conducía con licencia de aprendizaje, correspondía a él substanciar como defensa que su amigo extinto, sentado a su lado, era persona debidamente autorizada para conducir. *Pueblo* v. *Oquendo*, 79 D.P.R. 542 (1956); *Pueblo* v. *Segarra*, 77 D.P.R. 736 (1954); *Pueblo* v. *Negrón*, 76 D.P.R. 346 (1954); *Pueblo* v. *Figueroa*, 58 D.P.R. 673 (1941). Sin embargo, el resumen de la prueba recoge amplia evidencia introducida por el Estado al efecto de que su acompañante Ruiz Chaparro no tenía licencia, dato obtenido de la Oficina Regional del Departamento de Obras Públicas en la Base Ramey, Aguadilla (E.N.P., pág. 6).

*Con estos antecedentes y fundamentos la resolución apelada será confirmada.*