EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Edwin Meléndez Monserrate<br><br>Peticionario | Certiorari<br><br>2024 TSPR 80<br><br>214 DPR ___ |

Número del Caso: CC-2021-0592

Fecha: 19 de julio de 2024

Tribunal de Apelaciones:

Panel Especial

Representante legal de la parte peticionaria:

Lcdo. Jesús Miranda Díaz

Oficina del Procurador General:

Hon. Fernando Figueroa Santiago
Procurador General

Lcda. Mabel Sotomayor Hernández
Subprocuradora General Auxiliar

Lcda. Marie Díaz De León
Procuradora General Auxiliar

Materia: Derecho Probatorio – Insuficiencia de la presunción de falta de licencia para establecer más allá de duda razonable el delito de portación ilegal de un arma de fuego.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                         **CC-2021-0592**

Edwin Meléndez Monserrate

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 19 de julio de 2024.

En esta ocasión tenemos la oportunidad de determinar si para lograr la convicción por violación al Art. 5.04 de la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA ant. sec. 458c, (Ley de Armas de 2000), es suficiente que **en la etapa de juicio** el Estado pruebe que la persona acusada portaba un arma y descanse en la presunción de falta de licencia o si, por el contrario, el Ministerio Público está obligado a presentar prueba más allá de duda razonable sobre el elemento de ausencia del permiso de portación.

Por entender que la interpretación que extendimos en *Pueblo v. Pacheco*, 78 DPR 24 (1955) sobre la forma de aplicar la presunción del delito de portación ilegal

en la etapa de juicio invierte el peso de la prueba y releva al Estado de la obligación de probar el elemento de ausencia de licencia, procede que revoquemos la referida jurisprudencia.

Por lo tanto, para que el Estado alcance la culpabilidad de un acusado por posesión o portación ilegal más allá de duda razonable, el Ministerio Público no puede descansar únicamente en la presunción de ausencia de licencia, sino que está compelido a presentar prueba, directa o circunstancial, tanto de la portación del arma como de la falta de licencia para portarla, según disponía el Art. 5.04 de la Ley de Armas de 2000, supra.[1]

I

Entre el 20 de diciembre de 2016 y el 3 de enero de 2017 el Ministerio Público presentó varias denuncias contra el Sr. Edwin Meléndez Monserrate. En la primera fecha se le imputó haber irrumpido en la morada de su esposa, de quien estaba separado, con el objetivo de agredirle en la cabeza utilizando un arma de fuego. El Estado presentó dos acusaciones, a saber: un cargo por maltrato agravado, según dispone el Art. 3.2 (a) de la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley 54 del 15 de agosto de 1989, según enmendada, 8 LPRA sec. 632, y, otro cargo, por portar un arma de fuego sin licencia tipificado en el artículo 5.04 de la Ley de Armas, *supra*.

---

[1] Los hechos del presente caso tuvieron lugar mientras estuvo vigente la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA ant. sec. 458c, (Ley de Armas de 2000). La referida legislación quedó derogada con la aprobación de la Ley de Armas de Puerto Rico de 2020, Ley Núm. 168-2019, 25 LPRA 461 *et seq*.

En cuanto al evento del 3 de enero de 2017, el Ministerio Público presentó tres denuncias adicionales en las que le imputó haber violentado los artículos 5.04 y 5.15 de la Ley de Armas, *supra*, y dos cargos por tentativa de asesinato, Art. 93(a) del Código Penal de Puerto Rico, 33 LPRA sec. 5142(a). Según denunció el Estado, el peticionario apuntó y disparó un arma de fuego en un lugar público con la intención de dar muerte a dos parientes cercanos de su esposa, cuando estos transitaban en su vehículo por la vía pública. Las acusaciones en cuanto a estos hechos se presentaron el 10 de mayo de 2017 y, a solicitud de la defensa, ambos casos se ventilaron de manera conjunta.

Luego de celebrar el juicio por tribunal de derecho, el foro de instancia encontró culpable al peticionario de todos los cargos y, posteriormente, lo sentenció a una pena total de 185 años en prisión.

Al ejercer su derecho de apelar ante el Tribunal de Apelaciones, señaló que el foro primario erró al declararlo culpable porque no se probó su culpabilidad más allá de duda razonable. En específico, el peticionario argumentó que el Ministerio Público no presentó prueba que estableciera todos los elementos del delito que contempla el artículo 5.04 de la Ley de Armas de 2000, supra. Adujo que, conforme al precedente del caso *Pueblo v. Nieves Cabán*, 201 DPR 853 (2019), esa presunción aplica en etapas anteriores al juicio. Por lo tanto, (1) es inoperante en la etapa del juicio porque infringe el derecho constitucional a la presunción de inocencia y al derecho a un debido proceso de ley en la

medida que altera el peso de la prueba; y (2) el Ministerio no puede descansar en la presunción sobre la inexistencia de permiso o licencia de portación de un arma de fuego, sino que está obligado a probar todos los elementos del delito más allá de duda razonable.

El Procurador General ripostó con un *Alegato Suplementario* para argumentar que en *Nieves Cabán*, supra, no prohibimos categóricamente que --en el juicio-- el juzgador pudiera inferir razonablemente la ilegalidad de la portación del arma de fuego. A su vez, esbozó que el peticionario no presentó prueba para rebatir la presunción. Por lo anterior, adujo que la conclusión más razonable era que el peticionario poseía y utilizó ilegalmente un arma de fuego en las dos instancias que provocaron su convicción.

El foro apelativo intermedio notificó una *Sentencia* en la que, luego de modificar la pena porque no se probaron los daños alegados, confirmó el dictamen apelado. En esencia, el Tribunal de Apelaciones consideró que tanto el delito de irrumpir en la morada de su esposa como la tentativa de asesinato contra familiares de esta son de carácter grave. A su vez, fundamentado en la norma de *Pueblo v. Pacheco*, supra, y en la Regla 303 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, señaló que,

> **en nuestro ordenamiento rige la presunción de portación o posesión ilegal de armas de fuego - y es al acusado-** a quien incumbe destruir tal presunción. Mediante esta presunción, en casos de portación o posesión ilegal de armas de fuego, el Ministerio Público **no está obligado a probar que el acusado no tenía licencia cuando alegó este hecho en la acusación y probó la portación o posesión del arma.** Esta presunción

> **es válida en un proceso criminal debido a que es permisible. Esto es que no invierte la carga de la prueba, porque el juzgador no está obligado a inferir el hecho presumido.**
>
> A tenor con lo antes expresado, en este caso, la prueba demuestra la posesión del arma de fuego por el [peticionario]. Cónsono con la presunción permisible, se halló culpable al [peticionario] de posesión ilegal de un arma de fuego en los dos eventos del 7 de septiembre de 2016 y el 30 de diciembre de 2016. Por tanto, el TPI no erró en ese proceder.[2]

El peticionario recurrió de esa determinación ante este Tribunal con, esencialmente, los señalamientos del uso errado de la presunción de portación de arma ilegal en el juicio. Específicamente, aludió que el Ministerio Público quedó relevado de presentar prueba sobre uno de los elementos del delito y que, por ende, se incumplió con el estándar de prueba de más allá de duda razonable que se requiere en la etapa del juicio.

Contamos con la comparecencia de ambas partes, por lo que nos encontramos listos para resolver.

II

A

Como antesala que incide en la controversia que nos corresponde resolver, el Tribunal Supremo Federal atendió una serie de casos sobre el derecho a poseer y portar armas que dispone la Segunda Enmienda de la Constitución Federal.[3] La trilogía de casos comenzó con *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008). En esa oportunidad el Tribunal

---

[2] *Sentencia del Tribunal de Apelaciones*, Apéndice, págs. 28-19. (Énfasis suplido).

[3] Emda. II, Const. EE. UU., LPRA, Tomo 1, ed. 2016.

Supremo Federal declaró inválida una ley que establecía una prohibición absoluta a la posesión y portación de armas cortas en el hogar y determinó que la Segunda Enmienda garantiza el derecho individual de poseer y portar armas en el hogar para defensa propia.[4] A su vez, aclaró que esta garantía no es absoluta ni ilimitada[5] y, en ese contexto, estableció una lista no exhaustiva de las instancias en las cuales la regulación o restricción al derecho no viola la Segunda Enmienda de la Constitución Federal.[6]

La decisión de *Heller*, supra, resultó precursora de *McDonald v. Chicago*, 561 U.S. 742 (2010) en la cual, mediante la cláusula del debido proceso de ley que emana de la Decimocuarta Enmienda de la Constitución Federal,[7] el Máximo Foro Federal reconoció el derecho fundamental de todos los ciudadanos americanos de los estados de poseer y portar armas para defensa propia <u>en el hogar</u>.[8] Por tratarse de un derecho fundamental, aplica en Puerto Rico.

---

[4] *Pueblo v. Rodríguez López*, 210 DPR 752 (2022); *District of Columbia v. Heller*, 554 US 570 (2008).

[5] *Pueblo v. Rodríguez López*, supra, págs. 767-768; *District of Columbia v. Heller*, supra, pág. 626. ("Like most rights, the right secured by the Second Amendment is not unlimited.").

[6] *District of Columbia v. Heller*, supra, págs. 626-627. ("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms)"; Véase *Pueblo v. Rodríguez López*, supra, págs. 768-769.

[7] Emda. XIV, Const. EE. UU., LPRA, Tomo 1, ed. 2016.

[8] *Pueblo v. Colón González*, 209 DPR 967, 981 (2022); *Torres v. Com. of Puerto Rico*, 442 US 465, 471 (1979); *Examining Bd. of Engineers, Architects and Surveyours v. Flores de Otero*, 426 US 572, 599-601 (1976); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 US 663, 668 esc. 5 (1974).

Recientemente, y a la luz de los casos aludidos, en *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2122 (2022), la Alta Curia Federal extendió el derecho fundamental de poseer y portar armas para defensa propia <u>fuera del hogar</u>. Igualmente, además de reiterar la norma de *Heller*, supra, en cuanto a que la Segunda Enmienda no pretende impedir que los estados regulen y reglamenten el consabido derecho, avaló las limitaciones, siempre y cuando se cumpla con el *text-and-history test* desarrollado en *New York State*, supra.[9]

Inmediatamente, atendimos el caso de *Pueblo v. Rodríguez López*, 210 DPR 752 (2022) mediante el cual se impugnó la constitucionalidad del Art. 5.04 de la Ley de Armas de 2000, *supra*, que nos ocupa. En específico, se señaló que, al existir un derecho fundamental de poseer y portar armas, la exigencia de una licencia para esos fines era inconstitucional. Así, luego de estudiar varias jurisdicciones y de emplear el *text-and-history test* de *New York State*, supra, resolvimos que:

> [e]l requerimiento de licencia para poseer y portar armas en Puerto Rico solo persigue la política pública de cero tolerancia contra el crimen, lograr que las agencias de orden público

---

[9] En *Pueblo v. Rodríguez López*, supra, pág. 775, citando *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), pág. 2126, reproducimos el análisis que los tribunales debemos emplear para evaluar un planteamiento de regulación o limitación del derecho fundamental de portar armas para defensa propia o en la eventualidad de una confrontación: "**el Tribunal Supremo de Estados Unidos estableció, en este contexto, que: (1) cuando la conducta de un individuo esté protegida por el texto de la Segunda Enmienda, se presumirá que la Constitución protege tal conducta y, solo entonces, (2) el gobierno o estado deberá justificar la regulación o limitación del derecho consagrado en la mencionada enmienda constitucional, tras demostrar que la referida regulación o limitación es consistente con la tradición histórica de regulación de armas de fuego en la Nación**". (Énfasis en el original).

sean más efectivas en esa lucha y promover mayor seguridad y bienestar público para el Pueblo. Consecuentemente, el Art. 5.04 de la Ley de Armas de Puerto Rico de 2000, *supra*, era constitucional al amparo de la Segunda Enmienda de la Constitución de Estados Unidos.[10]

Con esta decisión quedó meridanamente claro que, en Puerto Rico, poseer o portar un arma para defensa propia de manera pública es un derecho fundamental[11] y, a pesar de que por su naturaleza es una garantía que opera *ex proprio vigore*, no es un derecho absoluto. En esa dirección, concluimos que la legislación estatal cumplió con el escrutinio judicial adoptado en *New York State*, supra, y, por ende, el requisito de licencia para poseer o portar armas es constitucionalmente válido.

B

La etapa de juicio es el momento realmente culminante y crítico en el proceso criminal, y al ser una vista constitucional, todas las garantías constitucionales operan con toda fuerza. Es la fase en la que se adjudica finalmente la culpabilidad o no de un acusado en la que, además, este podría quedar expuesto a una convicción.[12]

En atención a ello, nuestro ordenamiento constitucional y estatutario respalda que todo acusado tiene el derecho de descansar en la garantía de la presunción de

---

[10] *Pueblo v. Rodríguez López*, supra, pág. 782.

[11] *New York State Rifle & Pistol Association, Inc. v. Bruen*, supra, pág. 2122; *McDonald v. Chicago*, 561 US 742 (2010); *District of Columbia v. Heller*, supra.

[12] *Pueblo v. Nieves Cabán*, 201 DPR 853, 866 (2019); *Pueblo v. Pillot Rentas*, 169 DPR 746, 751(2006); *Pueblo v. Ortiz, Rodríguez*, 149 DPR 363, 374 (1999); *Pueblo v. Andaluz Méndez*, 143 DPR 656, 661 (1997); *Pueblo v. Rodríguez Aponte*, 116 DPR 653, 665 esc. 3(1985).

inocencia.[13] Por esto, un acusado no tiene la obligación de presentar prueba en su defensa o de que es inocente.[14] Tanto el derecho a no ser privado de la libertad sin un debido proceso de ley como la presunción de inocencia son axiomas constitucionales que exigen que la culpabilidad de un acusado se pruebe más allá de toda duda razonable.[15] Para que el Estado logre encontrar culpable a un acusado *está compelido a controvertir* esta presunción y ello se alcanza si el Ministerio Público presenta prueba *suficiente y satisfactoria* sobre: (1) cada uno de los elementos del delito, (2) su conexión con el acusado; y (3) la intención o negligencia criminal de este.[16] Recuérdese que "*la prueba es suficiente cuando versa en torno a todos los elementos del delito y su conexión con el acusado.*"[17] A su vez, "[l]a *prueba es satisfactoria cuando produce certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido.*"[18] Por lo tanto, corresponde al juzgador de los

---

[13] El derecho constitucional a la presunción de inocencia está consagrado en el Art. II Sec. de nuestra Carta de Derechos y, en lo pertinente, dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho […] a gozar de la presunción de inocencia". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Además, la Regla 110 de Procedimiento Criminal establece que "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en todo caso de existir duda razonable acerca de su culpabilidad, se le absolverá". 34 LPRA Ap.II.

[14] *Pueblo v. Irizarry*, 156 DPR 780, 787 (2002).

[15] *Pueblo v. Sánchez Molina*, 134 DPR 577, 586 (1993); *In re Winship*, 397 US 358, 364 (1970).

[16] *Pueblo v. Santiago et al.*, 176 DPR 133, 142 (2009); *Pueblo v. Sánchez Molina*, supra, pág. 586; *Francis v. Franklin*, 471 US 307, 309 (1985). *Pueblo v. Maisonave Rodríguez*, 129 DPR 49 (1991); *Pueblo v. González Beníquez*, 111 DPR 167, 174 (1981). Véase, además, *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454, 472-474 (1988).

[17] *Pueblo v. Sánchez Molina*, supra, pág. 589 esc. 6. (Énfasis suplido).

[18] *Ibid.*

hechos hacer esta apreciación _a base de la prueba presentada_.[19]

C

Por otro lado, en Puerto Rico, el requisito de licencia para portar armas data de inicios del siglo pasado.[20] En cuanto al estatuto en controversia, el Art. 5.04 de la Ley de Armas de 2000, supra, reglamentaba todo lo concerniente a la portación y uso de arma sin licencia ni permiso y, en lo pertinente, el precitado apartado legal disponía:

> **Toda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años**, sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.
>
> .    .    .    .    .    .    .    .

---

[19] _Ib.,_ pág. 589; _Pueblo v. Narváez Narváez_, 122 DPR 80 (1988); _Pueblo v. Carrasquillo Carrasquillo_, 102 DPR 545, 552 (1974).

[20] En _Pueblo v. Rodríguez López_, supra, pág. 781, repasamos la legislación que ha atendido la exigencia de la autorización para la portación de un arma. ("En nuestra jurisdicción, como sabemos, desde el Código Penal de 1902; la enmienda a la Ley Prohibiendo Portar Armas del 9 de marzo de 1905, en 1924; la primera [Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, 25 LPRA 411 et seq, (Ley de Armas de 1951)]; la Ley de Armas [de 2000], _supra_, y la reciente Ley de Armas de Puerto Rico de 2020, [supra] se ha permitido la portación de armas a las personas que obtengan una licencia y un permiso. Véanse, también: 1902 Leyes de Puerto Rico 657-658; 1924 Leyes de Puerto Rico 115; 1951 Leyes de Puerto Rico 427.") El hecho de que, en Puerto Rico, históricamente se ha exigido la licencia de portación de armas resultó uno de los factores para determinar que la legislación cumplió con el escrutinio judicial de _text-and-history test_ de _New York State_, supra.

> Se considerará como "agravante" cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa. […][21]

Según intimamos en *Pueblo v. Negrón Nazario*, 191 DPR 720, 752 (2014), para que el Estado logre la convicción de un acusado por el delito de portación ilegal tiene que presentar prueba en el juicio sobre: (1) la portación del arma y (2) la ausencia de permiso a esos efectos.[22] Allí expresamos que la falta del permiso de portación de arma *es un elemento esencial e imprescindible*.[23]

Al examinar el estatuto indicamos que, independientemente del uso que se le dé al arma de fuego, para fines exclusivos del Art. 5.04 de la Ley de Armas de 2000, *supra*, *el legislador lo que quiso codificar como delito era el mero ejercicio de portar un arma sin licencia o transportar un arma o parte de esta sin el debido permiso*.[24] La intención legislativa del articulado en cuestión resulta relevante cuando además dispone que constituye un "agravante" cualquier situación en la que se utilice el arma para la comisión de un delito o su tentativa. En otras

---

[21] 25 LPRA ant. sec. 458(c). (Énfasis suplido).

[22] Igualmente, en *Pueblo v. Negrón Nazario*, 191 DPR 720, 753 (2014) reconocimos que aun cuando la persona cuente con la licencia, se le puede imputar el delito de portación ilegal si **en el juicio** se presenta evidencia que no la portó según los términos autorizados que disponía la Ley de Armas de 2000, supra. Sin embargo, para llegar a esa conclusión, necesariamente el Estado tiene que probar la existencia de la licencia de portación de arma. *Pueblo v. Colón González*, supra, pág. 980.

[23] *Pueblo v. Colón González*, supra, pág. 980; *Pueblo v. Negrón Nazario*, supra, pág. 752.

[24] *Pueblo v. Negrón Nazario*, supra, pág. 753.

palabras, independientemente del delito cometido con un arma, portarla sin licencia de portación por sí solo es un delito.

A pesar de que es incuestionable que el Ministerio Público tiene que probar más allá de duda razonable los dos elementos constitutivos del delito de portación ilegal, desde *Pueblo v. Segarra*, 77 DPR 736 (1954), expresamos que del Art. 7 de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, 25 LPRA ant. secs. 411-454 (Ley de Armas de 1951), germano al que se cuestiona, surgía una presunción de ausencia de licencia que se levanta una vez el Ministerio Fiscal alegaba y probaba la portación de un arma.[25] Aun cuando esta inferencia nunca se ha codificado en el ordenamiento jurídico, concluimos que la ausencia de licencia era una presunción que el acusado tenía que controvertir con prueba.[26]

---

[25] Debemos señalar que la conclusión de *Pueblo v. Segarra*, 77 DPR 736, 738 (1954), respecto a que, en el juicio, corresponde al acusado rebatir la presunción, la adoptamos de un principio que acogimos en *Pueblo v. Negrón*, 76 DPR 346, 351 (1954), en cuanto a que "no incumbe al fiscal aducir prueba afirmativa para sostener una alegación negativa cuya veracidad queda razonablemente indicada por las circunstancias establecidas y que de ser incierta puede fácilmente ser contradicha mediante el **ofrecimiento de prueba documental o de otra índole que probablemente está en poder del acusado o bajo su dominio**.(Énfasis suplido). Sin embargo, en *Pueblo v. Negrón*, supra, ocurrió que se acusó al Sr. José Antonio Negrón Ramos de tener en su residencia dos alambiques sin que estuvieran inscritos en la oficina del Tesorero. El Art. 30 de la *Ley de Espíritus y Bebidas Alcohólicas*, Ley Núm. 6 de 30 de junio de 1936, 13 LPRA ant. sec. ___ **expresamente prohibía que se utilizara una vivienda como destilería**. A causa de esta prohibición en la ley, **era imposible que el señor Negrón Ramos pudiera inscribir legalmente en la entidad gubernamental los alambiques ocupados en su residencia**. Por ello, fundamentado en el principio descrito, resolvimos que el Fiscal no venía obligado a presentar prueba en el juicio respecto a la falta de inscripción, pues era suficiente probar que los alambiques estaban en la vivienda del señor Negrón Ramos.

[26] No podemos pasar por alto que al momento en que se resolvió *Pueblo v. Segarra*, supra, la Ley de Armas de 1951, supra, era la legislación vigente que, a modo de excepción y por el carácter privilegiado, limitaba el permiso de portación a ciertas personas. Así, resolvimos "[e]l Pueblo

Posteriormente, atendimos *Pueblo v. Pacheco*, 78 DPR 24 (1955), en el que expresamente resolvimos que, en casos como el presente, si el Ministerio Público alega y prueba la posesión o portación de un arma, este no tiene la obligación de probar en el juicio que el acusado carece de licencia, sino que al acusado le corresponde destruir la presunción probando que tenía licencia para esos efectos.[27]

D

La Regla 301 de Evidencia, 32 LPRA Ap. VI, dispone que una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción.[28] Al hecho o grupo de hechos previamente establecidos se les denomina "hecho básico",[29] mientras que al hecho deducido mediante la presunción, se le denomina "hecho presumido".[30] El rol de las presunciones es permitirle al juzgador establecer inferencias con relación a determinados supuestos, estableciendo como un hecho algo para lo que no se presentó prueba directa o indirecta.

---

imputó al acusado el portar un arma de fuego sin tener licencia para ello y probó que portaba un revólver en la fecha indicada en la acusación. *Una presunción de portación ilegal surgió entonces, la cual el acusado estaba llamado a controvertir probando, si podía, que tenía licencia para portarla.* En ausencia de tal prueba estableciendo la mencionada defensa y demostrando que *el acusado caía dentro de la excepción en el estatuto para aquéllos que tienen licencias para portar un arma, el jurado estaba justificado en hallar al acusado culpable* de lo que se le imputaba en la acusación." *Pueblo v. Segarra*, supra, pág. 738, (1954) (énfasis suplido).

[27] *Pueblo v. Pacheco*, 78 DPR 24, 30 (1955).

[28] Regla 301 de Evidencia, 32 PARA Ap. VI.

[29] *Ib.*

[30] *Ib.; Pueblo v. Colón González*, supra, pág. 977.

Ahora bien, en el ámbito penal, el efecto de una presunción depende de si esta perjudica o beneficia al acusado[31] y, para que sean válidas, el debido proceso de ley exige que las presunciones estén sujetas a los parámetros desarrollados por la doctrina constitucional federal.[32] Existen dos criterios, independientes entre sí, que requieren, a su vez, análisis distintos.[33] Primero, _la aplicación de la presunción no puede ser arbitraria ni irracional_.[34] Para ello, tiene que existir una relación o conexión racional entre el hecho básico y el presumido.[35] A este criterio de validez se le conoce además como el criterio de probabilidad o _more likely than not test_.[36] No tiene nada que ver _per se_ con la naturaleza, procedencia o efecto de la presunción ni con la prueba del caso en cuestión, se refiere a si la sabiduría legislativa al crear la presunción cumple como regla para el procedimiento judicial.[37]

---

[31] _Pueblo v. Colón González_, supra, pág. 985; _Pueblo v. Nieves Cabán_, supra, pág. 873.

[32] _Pueblo v. Colón González_, supra, pág. 984; _Pueblo v. Nieves Cabán_, supra, pág. 878; _Pueblo v. Sánchez Molina_, supra, pág. 586; _Francis v. Franklin_, supra, págs. 313-314; _Yates v. Aiken_, supra, pág. 214; U_lster County Court v. Allen_, 442 US 140, 156 (1979); _Mullaney v. Wilbur_, 421 US 684, 703-704 (1975).

[33] R. Emmanuelli Jiménez, _op. cit._ págs. 159-160.

[34] _Pueblo v. Colón González_, supra, pág. 984; _Pueblo v. Nieves Cabán_, supra, págs. 874-875; _Pueblo v. Sánchez Molina_, supra, págs. 586-588 (1993).

[35] _Ib._

[36] _Pueblo v. Sánchez Molina_, supra, pág. 586; _Barnes v. United States_, 412 US 837, 843 (1973); _Turner v. United States_, 396 US 398, 416 (1970); _Leary v. United States_, 395 US 6, 36 (1969). De acuerdo con _Ulter County Court v. Allen_, supra, pág. 167, el criterio de probabilidad consiste en que la ocurrencia del hecho presumido sea más probable que la no ocurrencia.

[37] R. Emmanuelli Jiménez, _supra_; E.L. Chiesa, _Sobre la validez constitucional de las presunciones_, XIV (Núm. 3) Rev. Jur. UIPR 727, 736-737 y 752 (1980). _United States v. Gainey_, 380 US 63, 67 (1985); _Tot v._

En segundo término, *una presunción no puede infringir la presunción de inocencia*.[38] Esto ocurre cuando, al aplicar la presunción, el Estado queda relevado de su obligación de probar un elemento del delito más allá de duda razonable o se altera el peso de la prueba para que el acusado presente prueba en su defensa o este tenga la obligación de persuadir al juzgador.[39]

La Regla 303 de Evidencia, supra, establece lo siguiente:

> Cuando en una acción criminal la presunción **perjudica a la persona acusada**, tiene el efecto de permitir a la juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo. Si de la prueba presentada surge duda razonable sobre el hecho presumido, la presunción queda derrotada. **La presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada.**
>
> (a) Cuando beneficia a la persona acusada, la presunción tendrá el mismo efecto que lo establecido en la Regla 302 de este apéndice.
>
> (b) Instruir al jurado sobre el efecto de una presunción contra la persona acusada, la jueza o el juez deberá hacer constar que:

---

*US*, 319 US 463, 467-468 (1943) ("[A] statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts.").

[38] *Pueblo v. Colón González*, supra, pág. 986; *Pueblo v. Sánchez Molina*, supra; *Yates v. Aiken*, supra; *Ulster County Court v. Allen*, supra; *Mullaney v. Wilbur*, supra; *Pueblo v. De Jesús Cordero*, 101 DPR 492, 501 (1973).

[39] *Pueblo v. Colón González*, supra, pág. 977; *Pueblo v. Nieves Cabán*, supra, pág. 879.; R. Emmanuelli Jiménez, *op.cit.;* Véanse *Pueblo v. Sánchez Molina*, supra, pág. 587, *Yates v. Aiken*, supra, *Ulster County Court v. Allen*, supra y *Mullaney v. Wilbur*, supra.

(1) Basta que la persona acusada produzca duda razonable sobre el hecho presumido para derrotar la presunción, y

(2) el jurado no estará obligado a deducir el hecho presumido, aun cuando la persona acusada no produjera evidencia en contrario. Sin embargo, se instruirá al jurado en cuanto a que puede deducir o inferir el hecho presumido si considera establecido el hecho básico.[40]

Por su parte, la Regla 301 de Evidencia, 32 LPRA Ap. VI, reconoce las presunciones incontrovertibles y controvertibles.[41] Además, las presunciones pueden ser fuertes o débiles y esta categoría está ligada al *quantum* de prueba requerido de quién la ataca, a saber: débil si perjudica al acusado y fuerte si lo beneficia y viceversa con relación al Estado.[42] Finalmente, existen las inferencias mandatorias o permisibles y todas se entrelazan de la siguiente manera: (1) *presunciones permisibles o no mandatorias*; (2) *presunciones mandatorias refutables o controvertibles*; y (3) *presunciones mandatorias o incontrovertibles*.

En lo que nos atañe, las *presunciones permisivas o no mandatorias* "el juzgador puede —pero no tiene— que inferir el

---

[40] (Énfasis suplido). Regla 303 de Evidencia, 32 LPRA Ap. VI.

[41] Regla 301(b)(c) de Evidencia, 32 LPRA Ap. VI, establece lo siguiente:
"[…]
(b) La presunción es incontrovertible cuando la ley no permite presentar evidencia para destruirla o rebatirla. Es decir, para demostrar la inexistencia del hecho presumido. El resto de las presunciones se denominan controvertibles.

(c) Este capítulo se refiere sólo a presunciones controvertibles."(Énfasis suplido).

[42] *Pueblo v. Colón González*, supra, pág. 983; *Pueblo v. Nieves Cabán*, supra, pág. 872; R. Emmanuelli Jiménez, op. cit. pág. 151; *Pueblo v. Sánchez Molina*, supra, pág. 587.

hecho presumido."[43] Constituye una inferencia permisible "cuando[,] a pesar de establecerse el hecho básico y no haberse presentado evidencia alguna para refutar el hecho presumido, la regla solo autoriza, pero no obliga al juzgador a inferir el hecho presumido."[44] En el ámbito criminal, el efecto de esta categoría de presunción estriba en que no se transfiere al acusado el peso de la prueba ni la obligación de persuadir al juzgador.[45] Esto se ajusta perfectamente a lo que establece la Regla 303 de Evidencia, supra, en el sentido de que una presunción no puede tener el efecto de variar el peso de la prueba sobre los elementos del delito ni de refutar una defensa de la persona acusada. Así, una presunción permisible podrá ser aplicada, salvo que el acusado pueda demostrar que, a la luz de los hechos probados en su caso en particular, no había un nexo racional entre el hecho básico y el hecho presumido.[46] No obstante, aun si este no estableciera la inexistencia de tal nexo causal, para que esta presunción satisfaga el criterio de probabilidad y, por ende, sea permisible contra un acusado, ***es esencial que la inferencia no sea la única base en la cual descansa la determinación de culpabilidad***.[47]

---

[43] *Pueblo v. Colón González*, supra, pág. 984; *Pueblo v. Nieves Cabán*, supra, pág. 874-875; *Pueblo v. Sánchez Molina*, supra, págs. 586-588.

[44] *Pueblo v. Colón González*, supra; *Pueblo v. Nieves Cabán*, supra, pág. 872.

[45] *Pueblo v. Colón González*, supra, pág. 983; *Pueblo v. Nieves Cabán*, supra, pág. 875; *Pueblo v. Sánchez Molina*, supra, pág. 588.

[46] *Pueblo v. Colón González*, supra; *Pueblo v. Nieves Cabán*, supra.

[47] *Pueblo v. Colón González*, supra, pág. 984; *County Court of Ulster County, N.Y. v. Allen*, supra, pág. 167; Véase *Pueblo v. Nieves Cabán*, supra, págs. 874-875; *Pueblo v. Sánchez Molina*, supra; *Barnes v. United*

E

Otro aspecto para considerar en este análisis de las repercusiones de una presunción es si el juicio es ante un Jurado o si, por el contrario, es por tribunal de derecho. En los casos ventilados por tribunal de derecho, los jueces conocemos el alcance que, con arreglo a su naturaleza y sus características, debe tener una presunción. Sin embargo, si el juicio es por Jurado, la validez de una presunción depende en gran medida del contenido de la instrucción y de la manera y el proceder del magistrado al momento de explicarle al Jurado sobre el efecto de una inferencia.[48] De manera que la autoridad de un juez y la forma en que este exponga la instrucción al Jurado puede fácilmente influenciar y provocar que una inferencia permisible se convierta en una presunción mandatoria cuyo resultado sea la invalidez de la instrucción.[49]

En ese contexto, recientemente atendimos *Pueblo v. Colón González*, 209 DPR 967, 977 (2022) y analizamos si, en la etapa de juicio, se sostenía la presunción en controversia ante una instrucción que el tribunal de instancia le impartió al Jurado. Específicamente, evaluamos la instrucción 18.1(b) del *Proyecto de Libro de Instrucciones al Jurado de septiembre de 2008* concerniente al delito de portación ilegal

---

*States*, supra; *Turner v. United States*, 396 US 398, 416 (1970); *Leary v. United States*, supra.

[48] *Pueblo v. Sánchez Molina*, supra, pág. 591.

[49] *Ib.*

de armas.[50] En esencia, esta establecía que, *una vez el Fiscal probara más allá de duda razonable la portación de un arma, le correspondía al acusado probar como defensa afirmativa que sí estaba autorizado a portar un arma.*[51]

En esa oportunidad, al examinar el origen de la presunción y ponderar el derecho fundamental de portar un arma que surgió a raíz del caso de *McDonald*, supra, observamos que el problema no se encontraba *per se* en la presunción de ausencia de licencia, sino en el efecto que provocó la instrucción 18.1(b) en el juicio. Esta instrucción emanó del *Libro de Instrucciones al Jurado de 1976* que, a su vez, dicho manual apuntaba a la *Ley de Armas de 1951*, supra, y a la norma de *Pacheco*, supra, y casos subsiguientes.[52]

---

[50] Véase, el Proyecto de Libro de Instrucciones al Jurado de septiembre de 2008, https://www.poderjudicial.pr/Documentos/SecretariadoConf/Proyecto-Instrucciones-Jurado-septiembre-2008.pdf (Última visita 15 de noviembre de 2023).

[51] Específicamente la instrucción 18.1(b) del Libro de Instrucciones al Jurado de 2008, pág. 221, establecía:

"En los casos en que se acusa a una persona de portar un arma sin tener la licencia de armas, el Ministerio Fiscal no está obligado a probar que el acusado [la acusada] no tiene licencia si se ha alegado tal hecho en la acusación. Cuando el Ministerio Fiscal ha probado más allá de duda razonable la portación del arma, le corresponde al acusado [a la acusada] probar como defensa afirmativa que sí estaba autorizado [autorizada] a portar un arma de fuego."

[52] *Pueblo v. Colón González*, supra, pág. 988; *Instrucciones al Jurado para el Tribunal Superior de Puerto Rico*, supra, págs. 293-295. Específicamente, la instrucción del Libro de Instrucciones al Jurado de 1976, *supra*, concerniente al delito de portación ilegal de armas postulaba:

"Debo instruirles, Señores del Jurado, que en estos casos en que se acusa a una persona de portar un arma sin tener licencia expedida por el Superintendente de la Policía de Puerto Rico o por el Tribunal Superior del sitio del domicilio del acusado, **el fiscal no está obligado a probar que el acusado no tiene licencia si se ha alegado tal hecho en la acusación y probado fuera de toda duda razonable tal portación, incumbiendo al acusado a establecer dicha alegación como una defensa afirmativa, es decir, corresponde al acusado probar que sí estaba autorizado a portar un arma**". (Énfasis suplido) *Ib*., pág. 294. Previo a la instrucción, el manual establecía que "la Ley de Armas de Puerto Rico dispone que el Tribunal Superior podrá conceder licencia para portar armas a una persona bajo ciertas circunstancias".*Ib*.

Así, concluimos que:

[e]sta instrucción indudablemente tuvo el efecto de alterar el peso de la prueba y hacer mandatoria la presunción en controversia. En otras palabras, la instrucción impartida por el juez relevó al ministerio fiscal de probar la ausencia de autorización para portar armas, uno de los elementos tipificados en el Art. 5.04 de la Ley de Armas, *supra.* Por lo tanto, le impuso al señor Colón González la obligación de 'producir prueba para persuadir al juzgador en torno a la no ocurrencia de ese elemento o hecho'.[53]

Por eso, en *Colón González*, supra, abundamos sobre el nuevo *Libro de Instrucciones al Jurado* que, con relación al delito de portación de arma de fuego sin licencia, en la actualidad, el Tribunal de Primera Instancia deberá impartir al Jurado la instrucción siguiente:

.    .    .    .    .    .    .    .

**Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida,** y en conformidad con las instrucciones que les impartí, **consideran que el Ministerio Público probó más allá de duda razonable *cada uno de los elementos del delito*** y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Publico no probo más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito. [54]

---

[53] *Pueblo v. Colón González*, supra, pág. 989; *Pueblo v. Sánchez Molina*, supra, pág. 587. Es meritorio aclarar que, en C*olón González*, supra, se sostuvo la convicción del acusado respecto al delito de portación ilegal porque este confesó que no tenía licencia de portación, el Estado corroboró dicho testimonio y en el juicio lo probó más allá de duda razonable.

[54] *Libro de Instrucciones al Jurado*, febrero 2023, pág. 348. (Énfasis suplido).

Contrario a las versiones anteriores, la pauta de *Pacheco*, supra, respecto a la forma de aplicar la presunción en el juicio no se incluyó en la redacción de la nueva instrucción. Nótese que la alegada contrariedad que ocasionaba la presunción quedó subsanada con la nueva instrucción. Asimismo, bajo el nuevo manual, el tribunal de instancia instruirá al Jurado que el Estado tiene que probar con evidencia suficiente y satisfactoria cada elemento del delito de portación ilegal. Por lo tanto, no existe razón por la cual deba ser distinto en los casos por tribunal de derecho.

III

Antes de disponer de la controversia, es necesario tener presente que la Ley de Armas de 1951, *supra*, era una legislación altamente restrictiva que, evidentemente, estaba dirigida al carácter privilegiado y excepcional de portar un arma. Precisamente, a raíz de la premisa de que esto era un privilegio limitado a ciertas personas, es que en *Pacheco*, supra, determinamos la forma en que se debía aplicar la presunción de ausencia de licencia de portación de arma en la etapa de juicio.

Indudablemente, después de *McDonald*, supra, y de *New York Rifle*, supra, quedaron desplazadas tanto la visión de los padres fundadores de la Constitución de Puerto Rico de rechazar este derecho como de carácter fundamental, así como

el privilegio que constituía poseer o portar un arma según reconocimos en *Pueblo v. Del Río*, 113 DPR 684, 689 (1982).[55]

Por otro lado, si bien en la actualidad ya no es un privilegio, Puerto Rico tiene la facultad de condicionar el ejercicio garantizado por la Segunda Enmienda fundamentado en que el derecho constitucional de poseer o portar armas no es absoluto. Según *Pueblo v. Rodríguez López*, supra, nuestra Ley de Armas de 2000, *supra*, cumplió con el escrutinio judicial de *New York Rifle*, supra. De manera que, irrespectivamente del carácter fundamental del derecho o de que ya no es un privilegio, la presunción se mantiene como evidencia *prima facie* de portación ilegal en la medida en que el Estado *tiene la autoridad para exigirle una licencia de portación de un arma a todo ciudadano que desee ejercer ese derecho*.

Ahora bien, el hecho de que se permita inferir la portación ilegal en etapas preliminares al juicio no puede interpretarse como que, en el juicio, el Estado pueda apoyarse únicamente en la aplicación sustantiva de la presunción de ausencia de licencia para afirmar que probó ese delito. De manera que, al evaluar la controversia central, esta no versa sobre la presunción en sí, sino que se delimita a determinar si, al presente, se sostiene la pauta de *Pacheco*, supra, en cuanto a si es suficiente utilizar, sin más, la inferencia como prueba sustantiva luego de haberse probado en el juicio la portación o posesión del arma.

Como mencionamos, el peticionario nos planteó que el Ministerio Público no probó más allá de duda razonable el

---

[55] *Pueblo v. Colón González*, supra, págs. 980-981.

delito de portación ilegal. Según expuso, el Estado se valió de la presunción para, de acuerdo con *Pacheco*, supra, no desfilar prueba sobre el elemento de ausencia de licencia. Afirmó que esto alteró el peso de la prueba y con ello se violentó tanto su derecho constitucional a la presunción de inocencia como al de un debido proceso de ley.

Por otro lado, el Estado nos expuso que, en el juicio, el Tribunal de Primera Instancia recibió, escuchó y aquilató la prueba y reclamó que el acusado impugnó la apreciación de la prueba sin haber planteado la insuficiencia de esta en el foro primario. Fundamentado en lo anterior, señaló que no debemos intervenir con la corrección de la determinación de culpabilidad que estrictamente se ajustó al estado de derecho vigente y a la jurisprudencia. Además, adujo que la conclusión del peticionario no era correcta toda vez que del expediente no surgía si, en efecto, el foro primario determinó la culpabilidad del acusado respecto al delito de portación ilegal fundamentado únicamente en la presunción de ausencia de licencia. Por lo tanto, afirmó que al cuestionarse la suficiencia de la prueba y el alegado error en su apreciación, el alcance de nuestra función revisora está limitado por consideraciones de extrema valía.

Asimismo, el Pueblo afirmó en su *Alegato* que, mediante prueba directa y circunstancial, probó más allá de duda razonable cada elemento de los delitos graves que el peticionario cometió, a saber: maltrato agravado al golpear a su esposa con un arma y tentativa de asesinato cuando atentó contra la vida de su suegra y del esposo de esta. A su vez,

señaló que "[e]n ambas ocasiones, luego de cometer los delitos, [el peticionario] huyó del lugar de los hechos, lo que demuestra que la portaba ilegalmente".[56] Añadió que el peticionario no refutó el hecho de que huyó ni podía pasarse por alto que este solo impugnó el delito de portación ilegal y que las convicciones de los delitos graves que cometió advinieron finales, firmes e inapelables. Así, por la naturaleza de los actos cometidos y las circunstancias previas y posteriores a los eventos, el Pueblo reclamó que indudablemente probó de manera puntual la posesión ilegal del arma. Finalmente, si bien el Estado argumentó que el expediente no refleja que el foro primario descansó en la inferencia para determinar la culpabilidad, manifestó que por la normativa jurisprudencial de Pacheco, *supra*, el juzgador podía razonablemente inferir la ilegalidad de la portación del arma pues *el peticionario no presentó prueba para rebatir la presunción*. Con esto esbozó que la conclusión más razonable es que el peticionario poseyó y utilizó ilegalmente un arma de fuego en las dos instancias que ocasionaron el fallo de culpabilidad.

De la narrativa procesal surge que el Tribunal de Apelaciones tuvo ante sí estos planteamientos y, al confirmar la *Sentencia* impugnada, resolvió que, conforme a *Pacheco*, supra, y a la Regla 303 de Evidencia, *supra*, en Puerto Rico rige la presunción de posesión o portación ilegal y es al acusado a quien le incumbe destruirla.

---

[56] Alegato del *Pueblo*, pág. 29.

Recalcamos, la Regla 303 de Evidencia, *supra*, expresamente dispone que "**la presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada.**" Esto implica que la presunción de ausencia de licencia no puede ser la única base en la cual el Estado gravite para encontrar culpable a una persona acusada de portación ilegal. Recuérdese que la falta de licencia o del permiso de portación de arma *es un elemento esencial e imprescindible* y ***es irrelevante para qué o cómo se utilizó el arma*** pues, el delito en cuestión se configura con *la mera portación o posesión de un arma sin licencia o la transportación de un arma o parte de esta sin el debido permiso*.[57] Por lo tanto, es insuficiente presentar prueba directa o circunstancial de la portación o posesión del arma ni el uso o los delitos cometidos con esta para con ello probar, además, el elemento de ausencia de licencia.

En otras palabras, para encontrar probado el delito en cuestión, en el juicio del caso de epígrafe tenía que ocurrir que, de acuerdo con los hechos que el Estado probó, el acusado no hubiese sembrado la duda razonable respecto a la inexistencia de una conexión racional entre el hecho de que portaba un arma con que no tenía licencia para ello. De esta forma se hubiese satisfecho el criterio de probabilidad. *Sin embargo, para poder avalar la validez de la aplicación de la presunción de ausencia de licencia, era esencial que esta no*

---

[57] *Pueblo v. Negrón Nazario*, supra, pág. 753.

*hubiese sido la única base en la cual el Estado descansara*
*para procurar que el juzgador encontrara culpable al*
*peticionario*. Veamos si los hechos que el foro primario
encontró probados son suficientes para inferir que el
peticionario no tenía licencia.

Aquí no existe duda de que el Ministerio Público probó
más allá de duda razonable que el acusado portaba o estaba en
posesión de un arma cuando cometió los delitos de maltrato
agravado y tentativa de asesinato. Sin embargo, no podemos
concluir lo mismo del elemento de ausencia de licencia. El
hecho de que el peticionario huyó luego de haber cometido
ambos delitos y que omitió contestar si poseía licencia para
portar armas, es prueba circunstancial insuficiente para
concluir que no tenía licencia. Por lo tanto, el Pueblo
procuró fortalecer su postura valiéndose exclusivamente de la
presunción y de la norma de *Pacheco*, *supra*, respecto al deber
del acusado de rebatirla, para justificar que el Ministerio
Público probó en el juicio que el peticionario cometió el
delito de portación ilegal por el cual los foros *a quo* lo
declararon culpable. Ciertamente, nuestra función revisora en
este caso está limitada por consideraciones de extrema valía,
a saber: el derecho constitucional a la presunción de
inocencia y al debido proceso de ley.

Reiteramos que la prueba circunstancial que el Pueblo
presentó solo conduce a que el peticionario poseyó un arma,
pero nos impide deducir que no tenía licencia para portarla.
La situación fáctica, el trámite procesal del caso y la

casuística discutida nos lleva a concluir que aplicar lo resuelto en *Pacheco*, supra, tiene el efecto de invertir el peso de la prueba para que el acusado demuestre que es inocente del delito de portación ilegal y exime al Estado de probar con prueba suficiente y satisfactoria el elemento del delito de ausencia de licencia. Habida cuenta de que esta jurisprudencia atenta contra el derecho del peticionario a la presunción de inocencia y al debido proceso de ley, procede que revoquemos la pauta de *Pacheco*, supra.

A raíz de nuestra determinación, y cónsono con lo que debe ocurrir en los casos por Jurado, resolvemos que, para alcanzar la culpabilidad de la persona acusada por posesión o portación ilegal de un arma más allá de duda razonable, el Ministerio Público está obligado a presentar prueba -directa o circunstancial- suficiente y satisfactoria de la portación o posesión del arma y de la falta de licencia para portarla o poseerla. Esto es, si el Estado no cuenta con la prueba directa, como la certificación que expide el Estado o la confesión corroborada del acusado, puede probar el elemento de ausencia de licencia con prueba indirecta o circunstancial. De este modo, si la prueba circunstancial desfilada cumple con lo dispuesto, los tribunales podrán avalar la aplicación de la presunción de ausencia de licencia sin violar los derechos constitucionales del acusado, según lo exige el *quantum* probatorio de la etapa del juicio.

IV

Por los fundamentos expuestos, resolvemos que el Estado no probó más allá de duda razonable el delito de portación ilegal, por lo que se revoca la Sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que modifique la pena conforme a lo resuelto en esta Opinión.

Se dictará Sentencia de conformidad.


                                    Erick V. Kolthoff Caraballo
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                  **CC-2021-0592**

Edwin Meléndez Monserrate

    Peticionario

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de julio de 2024.

Por los fundamentos expuestos en la Opinión que antecede, resolvemos que el Estado no probó más allá de duda razonable el delito de portación ilegal, por lo que se revoca la Sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que modifique la pena conforme a lo resuelto en esta Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió *Opinión de conformidad en parte y disidente en parte,* a la cual se une el Juez Asociado señor Colón Pérez. El Juez Asociado señor Estrella Martínez emitió una *Opinión de conformidad en parte y disidente en parte.* El Juez Asociado señor Feliberti Cintrón se inhibió.

                        Javier O. Sepúlveda Rodríguez
                      Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                    CC-2021-0592

Edwin Meléndez Monserrate

    Peticionario

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad en parte y disidente en parte a la cual se unió el Juez Asociado señor Colón Pérez.

En San Juan, Puerto Rico, a 19 de julio de 2024.

La controversia ante nuestra consideración era: si nuestra Constitución permite que el Ministerio Público utilice una presunción, que opera en contra de un acusado, para establecer un elemento esencial de un delito. Además, debíamos auscultar si la presunción particular de que una persona acusada no posee licencia para portar o poseer armas cumple con el estándar sobre la validez de las presunciones que la Corte Suprema Federal estableció y que este Tribunal incorporó a nuestra jurisdicción.

Como veremos, la aplicación de cualquier presunción que opere en contra de un acusado, y que verse sobre un elemento esencial del delito, incide

de manera impermisible sobre la presunción de inocencia y el debido proceso de ley, al eximir al Estado de su obligación de probar todos los elementos del delito más allá de duda razonable.

Estoy conforme, en parte, con la Opinión que suscribe una mayoría de mis compañeros y compañera de estrado. Mediante esta se revoca lo pautado en Pueblo v. Pacheco, *infra*, en reconocimiento de que la norma que surge de dicha jurisprudencia tenía el efecto de invertir el peso de la prueba y eximir al Estado, en la etapa de juicio, de demostrar con prueba suficiente y satisfactoria un elemento esencial del delito. A saber, la ausencia de licencia para la portación de un arma de fuego.

Desafortunadamente, a pesar de reconocer que se violenta la presunción de inocencia y el debido proceso de ley de un acusado al utilizar, en etapa de juicio, una presunción que opera en su contra, la Opinión que hoy emite este Tribunal continúa avalando el uso de esta presunción en etapas preliminares del proceso. Por entender que la presunción de inocencia y el derecho a un debido proceso de ley cobijan a una persona acusada, no solo durante el juicio, sino durante todas las etapas del proceso penal, me veo obligada a disentir en parte.

A pesar de resaltar los cambios que han ocurrido en la normativa relacionada al derecho a portar armas, la Opinión Mayoritaria ignora el impacto que estos tienen sobre el análisis que estamos llamados a hacer al aplicar el estándar

de razonabilidad para evaluar la procedencia de la presunción en cuestión.

**I**

**A. Presunción de inocencia**

En nuestro ordenamiento jurídico la presunción de inocencia de toda persona acusada es de rango constitucional, pues surge expresamente de la Carta de Derechos de la Constitución de Puerto Rico: "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". Art. II, Sec. 11, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 354. El propósito de esta garantía constitucional es:

> [E]stablecer claramente que corresponde a la **fiscalía demostrar, con prueba admisible, la culpabilidad de la persona acusada más allá de toda duda razonable.** En esa dirección, la inocencia de la persona acusada constituye el punto de partida en todo proceso criminal hasta que el Estado demuestre lo contrario, derrotando así la presunción. Como se expresó durante las deliberaciones de la Convención Constituyente: "La presunción más importante que nosotros conocemos bajo el sistema judicial americano es la presunción de inocencia". El objetivo de esta cláusula es descargar todo el peso probatorio, en cuanto a la culpabilidad de la persona acusada, en el ministerio público **e invalidar cualquier norma legal que sea contraria a este importante principio.** (Énfasis suplido). J. Farinacci Fernós, La Carta de Derechos, 1ra ed., San Juan, Ed. UIPR, 2021, pág. 202).

Es por ello que reiteradamente hemos expresado que la presunción de inocencia "**cobija al acusado en cuanto a todo elemento esencial del delito, el peso de la prueba permanece, durante todas las etapas del proceso a nivel de instancia, sobre el Estado**". (Énfasis suplido). Pueblo v. Irizarry, 156 DPR 780, 787 (2002); Pueblo v. Túa, 84 DPR 39, 53 (1961). Consecuentemente, la persona acusada de un delito no está

obligada a presentar prueba alguna para defenderse, sino que puede descansar plenamente en la presunción de inocencia que le asiste. Pueblo v. Irizarry, *supra*; Pueblo v. Rosaly Soto, 128 DPR 729, 739 (1991). Por otro lado, es sobre el Estado que recae la obligación de presentar **evidencia suficiente sobre todos los elementos del delito** y su conexión con el acusado a fin de establecer la culpabilidad de este más allá de duda razonable. Pueblo v. Casillas, Torres, 190 DPR 398, 414 (2014); Pueblo v. García Colón I, 182 DPR 129, 174 (2011).

Sobre lo anterior, es harto conocido que el *quantum* de prueba que se exige al Estado para controvertir la presunción de inocencia durante la etapa de juicio es de más allá de duda razonable. Pueblo v. Santiago, 176 DPR 133, 142 (2009). Este Tribunal ha explicado que, para cumplir con el referido *quantum* de prueba, la evidencia que se presente con el propósito de alcanzar una convicción penal debe producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Acevedo Estrada, 150 DPR 84, 100 (2000); Pueblo v. Rosario Rodríguez Román, 128 DPR 121, 131 (1991).

**B. Presunciones probatorias**

La Regla 301 de las Reglas de Evidencia de Puerto Rico define una presunción como "deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción". 32 LPRA Ap. IV, R. 301. Entonces, a "ese hecho o grupo de hechos

previamente establecidos se les denomina hecho básico [y] al hecho deducido mediante la presunción, se le denomina hecho presumido." Íd. En cuanto al efecto de una presunción en una acción criminal, la Regla 303 indica que "[c]uando en una acción criminal la presunción perjudica a la persona acusada, tiene el efecto de permitir a la juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo". 32 LPRA Ap. IV, R. 303. Además, la referida regla aclara que "[l]a presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada". Íd.

Ahora bien, hasta ahora hemos descrito lo que constituye una presunción, sus efectos y sus límites. Falta, entonces, que reseñemos la jurisprudencia federal y local en la cual se ha expuesto el estándar que tiene que sobrepasar una presunción para que se utilice en un procedimiento criminal y que sea constitucionalmente permisible.

En primer lugar, la Corte Suprema Federal atendió este asunto en Leary v. U.S., 395 US 6 (1969). En este caso se planteó la controversia sobre la constitucionalidad de permitirle al juzgador presumir, luego de probar el hecho básico de que una persona estaba en posesión de marihuana, el hecho deducido de que esta conocía que la marihuana había sido importada ilegalmente. Para contestar esta interrogante, la Corte Suprema Federal utilizó el estándar de "more likely than not". Explicó que este estándar requiere

que una presunción criminal se considere como irracional o arbitraria y, por lo tanto, **inconstitucional, a menos que se pueda afirmar con seguridad sustancial que es más probable que el hecho presumido derive del hecho probado que lo contrario. Leary v. U.S.**, *supra*, **pág. 36.** Nótese que la Corte Suprema Federal no hizo este análisis en lo abstracto. Por el contrario, manifestó que, para determinar la constitucionalidad de la presunción, era necesario contar con datos directos o circunstanciales sobre las creencias de los usuarios de marihuana acerca de la fuente original de la sustancia que consumían. Leary v. U.S., *supra*, pág. 38. Es decir, cuando un tribunal lleva a cabo la tarea de determinar la probabilidad de que un hecho presumido surja del hecho probado de manera que sobrepase el estándar de *"more likely than not"*, tiene la obligación de considerar la razonabilidad de la presunción, no de manera teórica y descontextualizándola de la realidad, sino con consciencia de todo el contexto relevante dentro del cual se intenta aplicar la presunción.

El Tribunal Supremo de Puerto Rico utilizó el estándar de Leary v U.S., *supra*, en Pueblo v. Segarra, 77 DPR 736 (1954), al expresar que del Artículo 7 de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, 25 LPRA ant. secs. 411-454 (Ley de Armas de 1951) surgía una presunción de ausencia de licencia, luego de haber establecido el hecho de que un acusado portaba un arma. Posteriormente, en Pueblo v. Pacheco, 78 DPR 24 (1955), el

Tribunal Supremo reiteró que, luego de que el Ministerio Público pruebe la posesión o portación de un arma, no tiene la obligación de probar en el juicio que el acusado carece de licencia, sino que la obligación de destruir la presunción y presentar evidencia de que tenía licencia para portar armas recae sobre el acusado.

**C. Derecho a portar armas**

Tanto la jurisprudencia federal como estatal han evolucionado en las últimas décadas hacia una conceptualización más liberal, menos restrictiva, del derecho a portar armas.

En particular, la Corte Suprema Federal resolvió en District of Columbia v. Heller, 554 U.S. 570 (2008) que la Segunda Enmienda de la Constitución de los Estados Unidos protege el derecho individual de poseer un arma de fuego, sin conexión con el servicio en milicia, y utilizar esa arma para propósitos tradicionalmente legales, como lo es la defensa propia dentro del hogar. Posteriormente, en McDonald v. Chicago, 561 US 742 (2010), la Corte concluyó que el derecho a portar armas es un derecho fundamental, por lo cual la cláusula del Debido Proceso de la Decimocuarta Enmienda incorpora el derecho de la Segunda Enmienda, según reconocido en *Heller*, de manera que se aplica por igual al gobierno federal y a los estados. Finalmente, en New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S.Ct. 2111, 2122 (2022) el máximo foro federal explicó que las Enmiendas Segunda y Decimocuarta protegen el derecho de un

individuo de portar un arma para su defensa propia fuera del hogar también.

Posteriormente, este Tribunal reconoció en Pueblo v. Rodríguez López, 210 DPR 752 (2022) que el derecho constitucional a poseer y portar armas, tanto dentro del hogar como en público, es un derecho fundamental que, en virtud de la cláusula del Debido Proceso de la Decimocuarta Enmienda de la Constitución de Estados Unidos, se extiende a Puerto Rico también.

Es crucial enfatizar que al momento en el que el Tribunal Supremo consideró el estándar de Leary v U.S., supra, en los dos casos mencionados, la ley vigente que regulaba la portación de armas era la Ley de Armas de 1951. Ese estatuto era sumamente restrictivo en cuanto a quién se autorizaba a obtener una licencia de portación de armas. Particularmente, el Artículo 20(a) limitaba la portación de armas a personas que cayeran dentro de cualquiera de cinco categorías: 1) miembros de las fuerzas armadas de los Estados Unidos y de Puerto Rico en el ejercicio de sus funciones como tales; 2) miembros de la Policía de Puerto Rico; 3) el Superintendente de Prisiones, jefes de penitenciarías insulares y alcaides de cárcel; 4) guardias de penales y custodios de presos; y, 5) funcionarios de aduanas e inmigración de los Estados Unidos. Ley de Armas de 1951, supra. Además, el Artículo 20(b) autorizaba la posesión de un revólver o una pistola a: 1) jueces y fiscales; 2) cualquier funcionario del Gobierno de Puerto Rico a juicio

del Jefe de la Policía; 3) conductores de correo; 4) *marshals* y *sub-marshals* de cualquier tribunal o corte; 5) conductores de fondos públicos; 6) conductores de fondos privados y custodios de fondos privados en instituciones bancarias, luego de justificar la necesidad de tal licencia ante el Tribunal de Distrito; y, 7) los colectores y agentes de Rentas Internas, siempre que hubieren sido autorizados por el Jefe de la Policía a solicitud del Tesorero de Puerto Rico. Ley de Armas de 1951, supra.

Como se puede observar, la Ley de Armas de 1951 solamente autorizaba la portación de armas de manera excepcional a miembros de ciertas profesiones particulares. Es dentro de ese contexto —un momento histórico en el cual la gran mayoría de la población no estaba autorizada a solicitar una licencia para portar armas— que este Tribunal utilizó el estándar de *"more likely than not"* para considerar la validez de una presunción de ausencia de licencia. Ciertamente, en aquel momento el Tribunal Supremo razonó que, en consideración de que la Ley de Armas de 1951 no autorizaba al ciudadano común a obtener una licencia de portación de armas, la presunción de ausencia de licencia sobrepasaba el estándar de *"more likely than not"*.

Dicho eso, resulta imperativo reseñar que el estatuto que aplica a los hechos de este caso es la Ley de Armas del 2000. Esta dispone, en el Artículo 2.02, que el Superintendente de la Policía expedirá una licencia de armas

a cualquier persona peticionaria que cumpla con los siguientes requisitos:

(1) Haber cumplido veintiún (21) años de edad.

(2) Tener un certificado negativo de antecedentes penales, y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.11 de esta Ley.

(3) No ser ebrio habitual o adicto a sustancias controladas.

(4) No estar declarado incapaz mental por un Tribunal.

(5) No incurrir ni pertenecer a organizaciones que incurran en actos de violencia, o dirigidos al derrocamiento del Gobierno constituido.

(6) No haber sido separado de las Fuerzas Armadas bajo condiciones deshonrosas, o destituido de alguna de las agencias del orden público del Gobierno de Puerto Rico.

(7) No estar bajo una orden del tribunal que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, alguno de los niños de ese compañero o a persona alguna, y no tener un historial de violencia.

(8) Ser ciudadano de los Estados Unidos de América o residente legal de Puerto Rico.

(9) No ser persona que, habiendo sido ciudadano de los Estados Unidos alguna vez, renunció a esa ciudadanía.

(10) Someter una declaración jurada atestiguando el cumplimiento con las leyes fiscales; estableciéndose que será razón para denegar la expedición de la licencia solicitada o para revocar ésta el que el peticionario haya incumplido las leyes fiscales del Estado Libre Asociado de Puerto Rico.

(11) Cancelar un sello de rentas internas de cien (100) dólares a favor de la Policía de Puerto Rico; disponiéndose que en los casos en que se deniegue la licencia, la cantidad pagada en sellos no será reembolsable.

(12) Someter junto a su solicitud tres (3) declaraciones juradas de tres (3) personas que no tengan relación de consanguinidad o afinidad con el peticionario y que, so pena de perjurio, atestigüen que el peticionario goza de buena reputación en su comunidad, que no es propenso a cometer actos de violencia y que a su mejor saber éste se encuentra emocionalmente apto para poseer armas de fuego, por lo que no existe objeción a que tenga armas de fuego.

(13) Someter su solicitud cumplimentada bajo juramento ante notario, acompañada de una muestra de sus huellas digitales, tomada por un técnico de la Policía de Puerto Rico o agencia gubernamental estatal o federal competente, y acompañada de dos (2) fotografías de dos (2) pulgadas por dos (2) pulgadas de tamaño, a colores, suficientemente reciente como para mostrar al peticionario en su apariencia real al momento de la solicitud. Ley de Armas de 2000, supra.

La Ley de Armas de 2000 es patentemente menos restrictiva que la Ley de Armas de 1951. Mientras que la Ley de Armas de 1951 autorizaba, a modo de excepción, que solamente personas que ejercieran ciertas profesiones

portaran armas, la Ley de Armas de 2000 tomaba como punto de partida que cualquier persona puede portar armas, y luego enumeraba ciertos criterios que excluirían a personas particulares de obtener la licencia.[1]

## II

Una mayoría del Tribunal hoy reconoce, correctamente, que lo resuelto en Pueblo v. Pacheco, *supra*, tenía el efecto de invertir el peso de la prueba para que fuese la persona acusada quien tenía que demostrar su inocencia y eximir al Estado de su deber de probar todos los elementos del delito. Permitir que se utilice una presunción en contra de la persona acusada, según pronunciado en Pueblo v. Pacheco, *supra*, violenta tanto la presunción de inocencia como el derecho al debido proceso de ley, por lo que estoy de acuerdo con el revocar dicho precedente.

Sin embargo, a pesar de llevar a cabo el análisis de rigor, la Opinión mayoritaria prohibió inexplicablemente el uso de presunciones que operen en contra del acusado **únicamente** durante la etapa de juicio, mas avalaron el uso de estas mismas presunciones durante las etapas preliminares. Así, y sin explicación alguna, ignoran por completo nuestros pronunciamientos en cuanto a la

---

[1] Nótese que la referida legislación quedó derogada por la Ley de Armas de Puerto Rico de 2020, Ley Núm. 168-2019, 25 LPRA 461 et seq. Surge de la Exposición de Motivos de este estatuto que el mismo se aprobó en reacción a las decisiones del Tribunal Supremo Federal que reconocieron el derecho a portar y poseer armas como uno fundamental. Consecuentemente, la Ley de Armas de Puerto Rico de 2020 resulta aún más liberal que los estatutos que le preceden.

aplicabilidad de la presunción de inocencia y del debido proceso de ley durante todo el proceso penal. Veamos.

La presunción de inocencia es uno de los pilares sobre los cuales está edificado nuestro sistema penal. Es una protección de índole constitucional que le asegura a toda persona que al momento en que se comienza un procedimiento penal, la responsabilidad de probar su culpabilidad más allá de toda duda razonable recae sobre el Ministerio Público. Para lograr eso, el Estado tiene que probar todos y cada uno de los elementos esenciales del delito y la conexión de la persona acusada con ellos. No olvidemos, además, que la presunción de inocencia cobija al acusado durante todas las etapas del proceso.

Dicho esto, resulta meridianamente claro que una presunción que opera en contra de una persona acusada es incompatible con la presunción de inocencia que surge de nuestra Constitución. Como explica el Prof. Ernesto Chiesa:

> [E]l análisis consiste en determinar si, de alguna manera, **el ministerio público ha quedado relevado de establecer algún hecho esencial** más allá de duda razonable o **si se ha variado el peso de la prueba** sobre tales hechos de modo que se imponga al acusado la obligación de persuadir, al menos por preponderancia de la evidencia; **ambas son constitucionalmente inválidas.** (Negrilla suplida). E. Chiesa. Sobre la validez constitucional de las presunciones, 14 Rev. Jur. UIA 727, 752 (1980).

Es que no hay otra conclusión razonable. Una presunción es una "deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción". 32 LPRA Ap. IV, R. 301. Permitir una presunción que opere en contra de un

acusado releva al Ministerio Público de su obligación de presentar prueba sobre todos y cada uno de los elementos esenciales del delito. Más aún, se invierte el peso de la prueba y se responsabiliza a la persona acusada de presentar prueba que derrote la presunción.

Hemos expresado reiteradamente que la presunción de inocencia "**cobija al acusado en cuanto a todo elemento esencial del delito, el peso de la prueba permanece, durante todas las etapas del proceso a nivel de instancia, sobre el Estado**". (Énfasis suplido). Pueblo v. Irizarry, *supra*. Por ello, reconocer que el uso de esta presunción tiene efectos adversos a estas garantías constitucionales fundamentales, obliga la prohibición de su uso **en toda etapa del proceso penal** y no circunscribirlo únicamente a la etapa del juicio.

Hoy, se corrige solamente un aspecto de una norma que evidentemente estamos llamados **a dejar en el pasado por completo**. A la luz de la presunción de inocencia que cobija a toda persona acusada, el curso de acción correspondiente era establecer, sin ambages, que el Ministerio Público no puede descansar de manera alguna, ni en ninguna etapa del proceso, en una presunción que recaiga sobre un elemento del delito. **Es por ello que reitero mi postura de que procedía decretar la prohibición absoluta de la presunción en controversia en todo procedimiento criminal por ser tajantemente inconstitucional.**

Ahora bien, al presumir, en la alternativa, que nuestro ordenamiento jurídico sí permite que algunas presunciones

recaigan sobre elementos esenciales del delito, premisa que rechazo de manera vehemente, procedo a explicar cómo la presunción particular en controversia no pasa el estándar de *"more likely than not"*.

Como reseñé anteriormente, en Pueblo v. Segarra, *supra*, este Tribunal empleó el estándar de *"more likely than not"* que surgía de Leary v U.S., supra. De manera específica, el Tribunal se preguntó si, dentro del contexto de la Ley de Armas de 1951, era razonable presumir que una persona que portaba un arma lo hacía sin licencia. En ese momento, el Tribunal contestó en la afirmativa. Sin embargo, tal y como reconoce la Opinión mayoritaria, no podemos pasar por alto que el análisis que se hizo en Pueblo v. Segarra, *supra*, estuvo enmarcado en una legislación que limitaba el permiso de portación a ciertas personas, a modo de excepción y por carácter privilegiado. Es decir, en Pueblo v. Segarra, *supra*, la presunción en controversia cumplió con el estándar aplicable dado que era razonable presumir que un individuo en posesión de un arma no tendría licencia para portarla. Esto así ya que la ley vigente no autorizaba a la persona común a portar armas, sino que le reservaba ese privilegio a miembros de unas profesiones particulares.

Resulta sorprendente, sin embargo, que la mayoría reconozca los grandes cambios que se han suscitado en nuestra concepción del derecho a portar armas, pero al momento de implementar el estándar de *"more likely than*

*not*", ignoren la relevancia de esos cambios sobre el análisis y se limiten a expresar que

> irrespectivamente del carácter fundamental del derecho o de que ya no es un privilegio, la presunción se mantiene como evidencia *prima facie* de portación ilegal en la medida en que el Estado tiene la autoridad para exigirle una licencia de portación de un arma a todo ciudadano que desee ejercer su derecho. Opinión mayoritaria, pág. 20.

**El hecho de que el Estado tiene autoridad para exigir una licencia de portación de armas es irrelevante al análisis**, pues la médula del estándar de "*more likely than not*" no es si el Estado puede requerir la referida licencia. El estándar de "*more likely than not*" exige que el Tribunal se pregunte si es razonable presumir, en vista de la normativa vigente sobre el derecho a la portación de armas, que una persona común que porta un arma lo hace sin poseer la licencia correspondiente.

Reitero, en la actualidad, nuestra concepción del derecho a portar armas es muy distinta a cuando se resolvió Pueblo v. Segarra, *supra*. La controversia ante nos requería que lleváramos a cabo el análisis de "*more likely than not*" *de novo* y en consideración de la jurisprudencia federal y estatal más reciente sobre el derecho a portar armas y de la Ley de Armas de 2000. No correspondía que reiteráramos una presunción que se estableció jurisprudencialmente hace setenta años dentro de un contexto jurídico completamente distinto al actual.

Este Tribunal está llamado a hacerse la misma pregunta que se hizo en el 1954: ¿En vista de la normativa actual referente al derecho a portar armas, es razonable presumir

que una persona que porta un arma lo hace sin la licencia correspondiente? Ciertamente, la jurisprudencia reseñada reconoce el derecho a portar armas dentro y fuera del hogar como uno de carácter fundamental. Asimismo, la Ley de Armas de 2000 es mucho más liberal en cuanto a los requisitos para obtener una licencia para portar armas que la Ley de Armas de 1951. Si bien la pregunta que estamos llamados a contestar no ha cambiado en los pasados setenta años, la normativa relevante sí. En consecuencia, nuestra respuesta debe cambiar. Dentro del contexto jurídico actual, es inconcebible que sea razonable presumir, en cualquier etapa del proceso penal, que toda persona que porta un arma lo hace sin la licencia correspondiente.

## III

Por los fundamentos antes expuestos, expreso mi conformidad con la parte de la Opinión mayoritaria que revoca Pueblo v. Pacheco, *supra*. Sin embargo, disiento de una mayoría de mis compañeros y compañera de este Tribunal en cuanto a limitar el efecto de la norma que hoy pautan a únicamente a la etapa de juicio. Esto así, ya que estimo improcedente que el Estado utilice en etapas preliminares presunciones que operan en contra de la persona acusada y que recaen sobre un elemento esencial del delito. Al sí proceder, este Tribunal continúa autorizando la violación de protecciones constitucionales tan fundamentales como lo son el debido proceso de ley y la presunción de inocencia,

por el mero hecho de que se trate de una etapa preliminar y no el juicio final.

Además, me resulta preocupante que el Tribunal haya reiterado los linderos del estándar de *"more likely than not"* que utilizamos para analizar la procedencia de presunciones, haya reseñado los cambios relevantes que ocurrieron con relación al derecho a portar armas en las pasadas décadas, y luego haya ignorado el llamado que teníamos para reevaluar la procedencia de una presunción que se estableció jurisprudencialmente hace setenta años dentro de una realidad jurídica y social muy distinta a la actual en lo concerniente al derecho a portar armas.

Por ello, me veo compelida a disentir en parte.


Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico | | |
| Recurrido | | |
| v. | CC-2021-592 | <u>Certiorari</u> |
| Edwin Meléndez Monserrate | | |
| Peticionario | | |

Opinión de conformidad en parte y disidente en parte emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 19 de julio de 2024.

En esta instancia, estoy de acuerdo con que el Estado no probó más allá de duda razonable que el Sr. Edwin Meléndez Monserrate (señor Meléndez Monserrate) cometió el delito de portación de un arma sin licencia. Ahora bien, haciendo eco de mi inconformidad en <u>Pueblo v. Colón González</u>, <u>infra</u>, mi oposición a la <u>Opinión</u> que hoy emite este Tribunal se fundamenta en que su análisis aparenta conducir a un contrasentido jurídico. Me explico.

De entrada, la <u>Opinión</u> anuncia la revocación del precedente establecido hace siete (7) décadas en <u>Pueblo v. Pacheco</u>, <u>infra</u>, entiéndase, el caso que dio génesis en nuestro ordenamiento jurídico a la presunción de posesión de arma sin licencia.[1] Tal curso de acción se apoya,

---

[1] Véase, <u>Pueblo v. Nieves Cabán</u>, 201 DPR 853, 877 (2019) ("…el dictamen que emitimos en <u>Pueblo v. Pacheco</u>…lo ratificamos en varios casos posteriores. Sin embargo, en

principalmente, en la conclusión de que lo establecido en Pueblo v. Pacheco, infra, sobre "la presunción del delito de portación ilegal en la etapa de juicio invierte el peso de la prueba y releva al Estado de la obligación de probar el elemento de ausencia de licencia".[2]

Similarmente, la Opinión expresamente reconoce en su análisis del derecho normativo aplicable a la controversia que: (1) el Ministerio Público está compelido a controvertir la presunción de inocencia mediante prueba suficiente y satisfactoria de cada uno de los elementos del delito; (2) la persona acusada no tiene la obligación de presentar prueba en su defensa o de que es inocente; (3) en la etapa del juicio operan todas las garantías constitucionales por estar en juego la privación de la libertad; y (4) la ausencia de licencia de portación de arma es un elemento esencial e imprescindible para ser hallado convicto bajo el Art. 5.04 de la Ley de Armas de 2000, infra.[3]

Con esa introducción y análisis normativo, la expectativa era que se rechazara el precedente de Pueblo v. Pacheco -y la presunción que creó- por no ser sostenible

_____

ese momento, ni en los subsiguientes, tuvimos que analizar la naturaleza de esta presunción"). Íd., pág. 877 (citas omitidas).

[2] Opinión mayoritaria, pág. 1.

[3] Véase, Pueblo v. Negrón Nazario, 191 DPR 720, 752 (2014).

bajo la doctrina del _stare decisis_, por ser manifiestamente errónea y por su consecuencia nefasta de exonerar al Estado de su obligación de probar la culpabilidad de la persona acusada más allá de duda razonable con respecto a todos los elementos del delito.[4] Todo ello indistintamente de la etapa procesal en que se pretendiera utilizar la presunción, pues, al anunciarse la revocación del precedente que la creó, el resultado lógico jurídico era declarar la inexistencia e inaplicabilidad de la mencionada presunción en nuestro sistema jurídico.

Sin embargo, arraigado en un razonamiento ambiguo, la _Opinión_ mayoritaria deja latente el uso de la presunción al expresar que el Estado meramente no puede apoyarse en

---

[4]La doctrina de _stare decisis_ dispone que, como norma general, un tribunal debe acatar sus decisiones anteriores en los casos que resuelva posteriormente. Su objetivo es la necesidad de lograr estabilidad y certidumbre legal. _Pueblo v. Díaz De León_, 176 DPR 913, 921 (2009). Se reconocen tres circunstancias excepcionales que justifican revocar un precedente: (1) si la decisión anterior es claramente errónea; (2) si sus efectos sobre el resto del ordenamiento son adversos, y (3) si la cantidad de personas que confiaron en esta es limitada. _Pueblo v. Díaz De León_, supra, pág. 922 (citando a _Pueblo v. Camacho Delgado_, 175 DPR 1, 20 esc. 4 (2008)). Véanse, _Pueblo v. Sánchez Valle et al._, 192 DPR 594, 645-646 (2015); _González v. Merck_, 166 DPR 659, 690-691 (2006)(Op. de conformidad del Juez Presidente Hernández Denton).

Por ello, hemos reconocido que, aunque el propósito de la doctrina de _stare decisis_ es lograr la estabilidad y certidumbre, más nunca debe ser el perpetuar errores. _Am. Railroad Co. v. Comisión Industrial_, 61 DPR 314, 326 (1943) citado en _Pueblo v. Díaz De León_, supra, págs. 921-922. Es que la doctrina no llega al extremo de declarar que la opinión de un tribunal tenga el alcance de un dogma que debe seguirse ciegamente aun cuando el tribunal se convenza posteriormente de que su decisión anterior es errónea. Íd., pág. 921.

CC-2021-592                                                    4

esta exclusivamente o usarla como única base para avanzar su caso. Por ello, la controversia material respecto a la impugnación de la referida presunción de arma ilegal quedó diluida a un asunto de suficiencia de prueba. Paralelamente, y, a mi juicio, más preocupante aún, a pesar de que reconoce que la presunción invierte el peso de la prueba, la Opinión vuelve a imponer a la persona acusada el peso de demostrar la "inexistencia de una conexión racional entre el hecho de que portaba un arma con que no tenía licencia para ello".[5]

Este panorama crea un precedente muy incierto, no tan solo para el Ministerio Público y los abogados de defensa, sino también para el juzgador de hechos y la Academia, pues no hay absoluta claridad respecto al uso o supervivencia de la presunción y el quantum probatorio requerido. En consecuencia, sostengo que volvimos a desaprovechar la oportunidad para expulsar una presunción anacrónica e irrazonable.

Expuesta mi posición, veamos, entonces, los antecedentes fácticos que originaron la controversia ante nos.

**I**

Los hechos materiales de este caso no están en controversia. En síntesis, el Sr. Edwin Meléndez Monserrate (Peticionario o señor Meléndez Monserrate) fue hallado

---

[5] Opinión mayoritaria, pág. 24.

culpable de varios delitos, entre ellos, la violación al Art. 5.04 de la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA ant. sec. 485c (Ley de armas de 2000) por portación y uso de un arma de fuego sin licencia. En revisión, tanto ante el foro intermedio como ante este Tribunal, el Peticionario señaló que el Ministerio Público no presentó prueba en el juicio que estableciera más allá de duda razonable todos los elementos del delito, en particular, la ausencia de permiso o licencia para la portación de arma. Al respecto, adujo que el Ministerio Público descansó en la presunción de arma ilegal y que esto tuvo el efecto de revertir el peso de la prueba y atentar contra su presunción de inocencia.

En lo aquí pertinente, el Tribunal de Apelaciones resolvió "que en nuestro ordenamiento rige la presunción de portación o posesión ilegal de armas de fuego -y es el acusado- a quien incumbe destruir tal presunción".[6] El foro apelativo intermedio se fundamentó en lo resuelto por este Tribunal en Pueblo v. Pacheco, supra, en la pág 30. Además, dictaminó que, por tratarse de una presunción permisible, el Ministerio Público no estaba obligado a probar que el imputado no tenía licencia cuando se alegó tal hecho en la acusación y se probó la portación o posesión del arma.

---

[6]Véase, Apéndice, págs. 27-28.

Insatisfecho, el Peticionario presentó el recurso de _certiorari_ que hoy nos ocupa.

**II**

Como punto de partida, debemos puntualizar que "[u]na presunción es una **deducción de un hecho que la ley autoriza a hacer o requiere que se haga** de otro hecho o grupo de hechos previamente establecidos en la acción". (Negrillas suplidas). Regla 301 de Evidencia, 32 LPRA Ap. VI(a).[7] Como resultado, al hecho establecido se le denominará hecho básico y al hecho deducido mediante la presunción se le conoce como hecho presumido. Íd. De igual forma, una presunción será "incontrovertible cuando **la ley** no permite presentar evidencia para destruirla o rebatirla" es decir, para demostrar la inexistencia del hecho presumido. (Negrillas suplidas). Íd., (b). A su vez, el resto de las presunciones se denominarán como controvertibles. Íd.

Esto es importante para nuestro análisis debido a que la referida presunción de arma ilegal que aquí se intentó impugnar no surgió de la Ley de Armas de 2000 o de algún otro estatuto, sino que fue creada jurisprudencialmente.[8]

---

[7]Para algunas de las presunciones reconocidas en nuestro derecho probatorio, véase la Regla 304 de Evidencia, supra.

[8]Véase, Chiesa Aponte, E.L., _Compendio de Evidencia (En el Sistema Adversarial)_, México, Ed. Tirant Lo Blanch, 2021, págs. 95-100. ("Pero en la Opinión [_Pueblo v. Nieves Cabán_] nada se dice de la fuente de esa presunción; se da por sentada su existencia. La Ley de Armas no crea esa presunción. En la Opinión… a pesar de que se dedica muchas

En específico, en <u>Pueblo v. Pacheco</u>, 78 DPR 24 (1955) se

resolvió que

> [e]n casos de portación o posesión ilegal de armas de fuego el fiscal no viene obligado a probar que el acusado no tenía licencia con tal fin, **cuando se ha alegado tal hecho en la acusación** y **se ha probado la portación o posesión del arma,** ya que en ellos **surge la presunción de portación o posesión ilegal y es al acusado a quien incumbe destruir tal presunción.** <u>Pueblo v. Segarra, 77 D.P.R. 736;</u> <u>Pueblo v. Negrón, 76 D.P.R. 346,</u> en el cual dijimos a la pág. 351 que "...Existe sin embargo otro principio aceptado generalmente por los tribunales americanos al efecto de que no incumbe al fiscal aducir **prueba afirmativa** para sostener una **alegación negativa** cuya veracidad queda razonablemente indicada por las circunstancias establecidas y que de ser incierta pueda fácilmente ser contradicha mediante el ofrecimiento de prueba documental o de otra índole que probablemente está en poder del acusado o bajo su dominio." Era por tanto innecesario considerar cualquier evidencia que el fiscal presentara para probar que el acusado no tenía licencias para portar o poseer armas de fuego, ya que al propio acusado era a quien correspondía probar que tenía tales licencias. Él no ofreció prueba

---

páginas a exponer normas harto conocidas sobre la vista preliminar y la moción de desestimación bajo la regla 64 (p) de Procedimiento Criminal, nada se dice sobre el origen de la presunción que no sea invocar a <u>Pueblo v. Pacheco Ruiz</u>, y que <u>Pacheco Ruiz</u> se basó en <u>Pueblo v. Segarra</u> y en <u>Pueblo v. Negrón Ramos</u>". Íd., pág. 96 (citas omitidas).

Por otro lado, se clarifica que la mencionada presunción tampoco se codificó bajo el Art. 6.26 de la Ley de Armas de 2020, 25 LPRA sec. 466y. Similarmente, tampoco se debe confundir con la presunción que estableció el Art. 14 de la derogada Ley de Armas de 1951 respecto a la presencia de armas en un vehículo como evidencia <u>prima facie</u> de su posesión ilegal por todas las personas que se encontraran en tal vehículo al momento del registro. Entiéndase, se refiere a una presunción aplicable al momento del registro (validez) y no de una presunción aplicable en la etapa de juicio como el caso de autos.

alguna a ese efecto. (Negrillas suplidas)
Íd., pág. 30.

En consecuencia, desde hace siete (7) décadas ha regido en nuestra jurisdicción la existencia de una presunción de portación o posesión ilegal creada por precedente judicial que, en esencia, releva al Ministerio Público de tener que presentar prueba afirmativa para sustentar la alegación negativa de que la persona imputada portaba un arma sin tener licencia para ello. Véanse, Pueblo v. Negrón Ramos, 76 DPR 346 (1954); Pueblo v. Segarra, 77 DPR 736 (1954); Pueblo v. Pacheco, supra; Pueblo v. Del Río, 113 DPR 684 (1982); Pueblo v. Nieves Cabán, 201 DPR 853 (2019); Pueblo v. Colón González, 209 DPR 967 (2022), entre otros.

A causa de ello, una vez el Ministerio Público probaba que el imputado portaba un arma en la fecha indicada, automáticamente surgía la presunción de que portaba el arma sin licencia. Establecida la presunción, le correspondía al acusado presentar prueba de que sí contaba con licencia.

Sin embargo, han sido múltiples las ocasiones en las que se intentó impugnar una convicción en la que se utilizó la referida presunción.[9] Así, por ejemplo, en Pueblo v. Nieves Cabán, supra, el imputado nos planteó que el Ministerio Público no pasó prueba sobre el elemento del

_____

[9]Véanse, Pueblo v. Del Río, supra, págs. 688-689; Pueblo v. Cortés del Castillo, 86 DPR 220, 235 (1962) (se catalogó de frívola la contención del acusado respecto a que el Estado tenía que establecer que no estaba autorizado a portar armas); Pueblo v. Oquendo, 79 DPR 542 (1956).

delito de ausencia de licencia o permiso para portar un arma de fuego para que se le encontrara causa probable para juicio por violación al Art. 5.04 de la Ley de Armas de 2000.

En ese caso una mayoría de este Tribunal, a pesar de discutir la referida presunción bajo la normativa constitucional y la Regla 303 de Evidencia, supra, determinó, entre otras cosas, que se trataba de una inferencia permisible y no mandatoria compatible con el juicio de probabilidades de la etapa procesal de vista preliminar. Por ello, la allí mayoría distinguió que en el juicio el Estado debía probar más allá de duda razonable la comisión del delito de la forma como proceda en derecho y que en ese momento es que corresponderá evaluar si es válido aplicar esta presunción, en el caso que el dictamen se sustente en ella. Íd., pág. 881.

Ahora bien, en aquel momento la disidencia expresó que el dictamen mayoritario tendría el efecto de permitir que el Ministerio Público someta a un ciudadano a un procedimiento penal sin que se presente un ápice de evidencia sobre un elemento "esencial e imprescindible" del delito que se le imputa.[10] Pueblo v. Nieves Cabán, supra, págs. 895-896.

---

[10] Opinión disidente de la Jueza Asociada señora Rodríguez Rodríguez a la que se unieron la Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señor Estrella Martínez y señor Colón Pérez.

Similarmente, alineados con nuestras expresiones previas en Pueblo v. Negrón Nazario, supra, reconocimos la obligación del Ministerio de presentar evidencia sobre la ausencia de licencia al momento de encausar a un ciudadano por el delito tipificado en el Art. 5.04 de la Ley de Armas de 2000, y que el no hacerlo transgredía los principios más básicos del debido proceso de ley. En ese sentido, el bloque disidente enfatizó que bajo la tesis mayoritaria la ausencia de evidencia sobre la existencia de una licencia permitía a un juzgador de hechos concluir que la evidencia es inexistente. Pueblo v. Nieves Cabán, supra, pág. 895.

Por otro lado, enfatizamos que era necesario reevaluar la presunción de portación ilegal que surgió en un contexto histórico y jurídico muy particular en el que la posibilidad de que un ciudadano común pudiese obtener una licencia de poseer o portar arma era muy limitada. Íd., pág. 897. Como resultado, expresamos que el validar la mencionada presunción mantenía un status quo anacrónico e incongruente con los desarrollos legislativos y jurisprudenciales, así como los avances tecnológicos recientes.[11]

Cónsono con el bloque disidente en Nieves Cabán, la decisión mayoritaria fue criticada por la Academia al expresar que la exigencia de presentar prueba sobre todos

---

[11]Ahora bien, puntualizo que todos estos desarrollos y avances son materiales, pues abonan como criterios sustantivos a considerarse al momento de revocar un precedente judicial.

los elementos del delito durante la vista preliminar no puede eliminarse con una presunción creada mediante jurisprudencia. Vivian I. Neptune Rivera, Aníbal Román Medina, <u>Análisis de las opiniones del Tribunal Supremo de Puerto Rico en materia de Derecho Probatorio durante el término 2018-2019</u>, 89 REV. JUR. UPR 535, 548 (2020).

De forma similar, el tratadista y profesor Ernesto L. Chiesa comentó que:

> **A estas alturas del sigo 21,** no me parece suficiente-ni mucho menos-sostener la validez de una presunción solo por razón de que el hecho presumido sea una "alegación negativa", aunque se trate de un elemento esencial del delito imputado. Cuando se imputa el delito de poseer o portar un arma sin la correspondiente licencia expedida por el Estado, **"no poseer la licencia" adviene un elemento esencial del delito, que debe ser probado por el ministerio fiscal más allá de duda razonable y sin que pueda exigírsele al acusado evidencia para negar ese elemento negativo del delito,** so pena de que se estime probado más allá de duda razonable. Tampoco es suficiente para validar la presunción la dificultad de probar un "negativo" (la inexistencia de algún hecho) y que el acusado puede fácilmente presentar como prueba la correspondiente licencia. **Más fácil es para fiscalía presentar una certificación de la Policía de que en los archivos no aparece registrada esa licencia, prueba de referencia admisible bajo la Regla 805 (J) de Evidencia.** (Negrillas suplidas) Chiesa Aponte, E.L., op cit., págs. 97-98.[12]

---

[12]A su vez, el mencionado autor nos invita a distinguir las situaciones en que la persona imputada levanta una defensa afirmativa como causa de justificación o de exculpación. En nuestro ordenamiento se reconoce que no viola el debido proceso de ley el que el acusado tenga que presentar evidencia para persuadir al juzgador de que

Ahora bien, más recientemente, en <u>Pueblo v. Colón González</u>, 209 DPR 967 (2022), se impugnó nuevamente la validez de la presunción de portación de arma ilegal. En esa ocasión, y como se anticipó en <u>Nieves Cabán</u>, la controversia surgió en la etapa de juicio durante las instrucciones impartidas a un jurado y la figura del error no perjudicial ("harmless error").[13] En lo aquí pertinente, el allí Peticionario argumentó que la instrucción impartida respecto a la presunción de arma ilegal violó su presunción de inocencia y relevó al Ministerio Público de probar más allá de duda razonable todos los elementos del delito.[14]

Una mayoría determinó que la instrucción que se le impartió no tenía espacio en la etapa de juicio por jurado, por contravenir preceptos fundamentales constitucionales como la presunción de inocencia y la obligación del Estado

---

actuó, por ejemplo, en legítima defensa, bajo coacción o mientras era inimputable. Íd., pág. 98 (citas omitidas).

[13]También la <u>Opinión</u> mayoritaria resolvió que el Ministerio Público presentó prueba independiente (<u>aliunde</u>) circunstancial que corroboró la confesión o declaración auto incriminatoria del imputado respecto a que no poseía licencia de armas. Asunto del cual también disentí del curso mayoritario por no obrar en el expediente prueba independiente que estableciera el elemento del delito bajo el Art. 5.04 de la Ley de Armas de 2000.

[14]La instrucción al Jurado: "cuando el Ministerio Fiscal ha probado más allá de duda razonable la portación de arma le corresponde al acusado probar como defensa afirmativa que sí estaba autorizado a portar un arma de fuego…". <u>Pueblo v. Colón González</u>, supra, pág. 977. *Véase*, Libro de Instrucciones al Jurado del 1976 y del Proyecto de Instrucciones al Jurado del 2008.

de probar todos los elementos del delito más allá de duda razonable.[15] Añadió la <u>Opinión</u> del Tribunal que se trata de una presunción permisible que requiere que la instrucción que se imparte al jurado explique que se permite, pero no se obliga a inferir el hecho presumido, entiéndase, la falta de licencia para para portar armas. Sin embargo, a pesar de haberse determinado que la instrucción fue errónea, se concluyó que se trató de un error no perjudicial, ya que bajo la doctrina del <u>corpus delicti</u> el Ministerio Público presentó otra prueba independiente a la confesión de ausencia de licencia que, según la Mayoría, tuvo el efecto de corroborar el elemento del delito.

En aquella ocasión, nuevamente disentí del curso de acción mayoritario y expresé que, a mi juicio, **se erró al no decretar la prohibición absoluta de esta presunción en todas las etapas del procedimiento judicial y con ello desterrarla de una vez de nuestro ordenamiento jurídico.**[16] Sobre este particular, señalé que, aunque la postura mayoritaria intentó impartirle un nuevo carácter a la

---

[15]La mayoritaria *citó a* <u>Pueblo v. Sánchez Molina</u>, 134 DPR 577 (1993)). De igual forma expresó que en el 2022 se aprobó un nuevo Libro de Instrucciones al Jurado en el cual se corrigió el texto de la instrucción, ahora bajo la 13.9. <u>Pueblo v. *Colón González*</u>, supra, pág. 990-91 (*citando a* <u>In re</u> <u>Aprobación del Libro de Instrucciones al Jurado y otros</u>, 208 DPR 1042 (2022) (Resolución).

[16]<u>Pueblo v. Colón González</u>, supra, pág. 995 (Opinión disidente del Juez Asociado Señor Estrella Martínez a la cual se unió el Juez Asociado Señor Colón Pérez).

presunción y difuminar su efecto su aplicación continuaba
transgrediendo la obligación intransferible del Ministerio
Público de probar todos los elementos del delito más allá
de duda razonable. Por ello, reiteré los fundamentos
esbozados en la disidencia de Nieves Cabán respecto a que
la ausencia de licencia no puede ser un hecho presumido
dado que constituye un elemento imprescindible del delito
que obliga al Ministerio Público a presentar prueba sobre
su configuración.[17]

Como resultado, la decisión en Colón González volvió
a ser objeto de crítica en la Academia. Al respecto, la
Profesora Vivian I. Neptune Rivera expresó que:

> [l]a opinión mayoritaria, a nuestro
> entender, **desaprovechó la oportunidad de
> eliminar la presunción jurisprudencial de
> ausencia de autorización para portar armas,
> por violentar la presunción de inocencia y
> colocar a la parte acusada en la posición
> de tener que presentar prueba.** El **reiterar
> qué es una presunción permisible y no
> mandatoria, abre la puerta a lesionar el
> derecho constitucional de la parte**

---

[17]Adviértase que, "en el nuevo Libro de Instrucciones al Jurado, aprobado de forma unánime por este Tribunal, se excluyó esta presunción de las instrucciones que deberán ser impartidas sobre el delito de portación, transportación y uso de un arma de fuego sin licencia vigente. En cambio, **se enfatiza que el jurado solo deberá rendir un veredicto de culpabilidad si el Estado probó más allá de duda razonable cada uno de los elementos del delito.** Evidentemente, ello denota lo anacrónico que es mantener vigente esta presunción bajo el alegado carácter permisivo que la Mayoría le otorga." (Negrillas suplidas). Pueblo v. Colón González, supra, nota 13 (Opinión disidente del Juez Asociado Señor Estrella Martínez a la cual se unió el Juez Asociado Señor Colón Pérez). Véase *In re Aprob. Libro Inst. Jurado*, supra; Pueblo v. Edwin Meléndez Monserrate, Opinión mayoritaria en la pág. 19.

**acusada.** De esta manera, coincidimos con las expresiones del juez asociado Estrella Martínez en su opinión disidente, a la que se unió el Juez Asociado Colón Pérez. Es importante recordar que fue en la opinión disidente en *Pueblo v. Nieves Cabán,* cuando por voz de la jueza asociada Anabelle Rodríguez se indicó: "[L]a postura que propone [la opinión mayoritaria del Tribunal], de que es posible deducir un hecho sin que se establezca el hecho base del que éste ha de derivar, contraviene la propia definición de lo que es una presunción en nuestro ordenamiento probatorio y transgrede los principios más básicos de la lógica formal". (Negrillas suplidas y citas omitidas). V.I. Neptune Rivera; F. Rivera Fret, Derecho Probatorio, 92 Rev. Jur. U.P.R. 331, 337 (2023).

Debemos tener presente que, desde nuestras expresiones en Pueblo v. Negrón Nazario, supra, pág. 752, se resolvió que el delito de portación ilegal de un arma de fuego bajo el Art. 5.04 de la Ley de Armas de 2000, supra, conlleva **como elemento esencial imprescindible** la ausencia de autorización para la portación. Como resultado, se ha reconocido que la ausencia de una autorización para la portación de arma es un requisito para la comisión del delito tipificado en el Art. 5.04 de la Ley de Armas de 2000. Pueblo v. Colón González, supra, pág. 979. Es decir, para probar el delito tipificado en el Art. 5.04 de la Ley de Armas de 2000, se tienen que probar los dos elementos del delito: (1) la portación de arma y (2) la ausencia de autorización para portar el arma. Íd., pág. 980.

Por ello, sostengo que la mencionada presunción de posesión de arma ilegal ya no tiene espacio en nuestra

jurisdicción. Reitero que una presunción no puede tener un efecto indebido en contra del acusado en violación a su presunción de inocencia y a su derecho a que el Ministerio Público establezca todos los elementos del delito más allá de duda razonable. Véase, Pueblo v. Sánchez Molina, 134 DPR 577, 587 (1993), Yates v. Aiken, 484 U.S. 211, 214 (1988); Pueblo v. De Jesús Cordero, 101 DPR 492, 501 (1973); In re Winship, 397 U.S. 358, 363 (1970).[18] De igual forma, "el debido proceso de ley no da cabida a que las presunciones sean utilizadas para probar un elemento del delito, ya que sería una violación que atenta contra el andamiaje constitucional". V.I. Neptune Rivera et al., supra, pág. 340.

Hoy, tuvimos nuevamente la oportunidad de desterrar de nuestro derecho probatorio penal esta desacertada presunción y con ello ponerle punto final a todo este desarrollo jurisprudencial innecesariamente confuso y ambiguo. A fin de cuentas, y como expresé en mi voto disidente en Colón González, al Ministerio Público no le sería oneroso establecer el elemento del delito de ausencia de licencia. Por el contrario, "[b]asta que presente una certificación negativa de permiso de licencia obtenida de las bases de datos que el propio Estado controla". Pueblo

---

[18]Véase además el Informe del Comité Asesor Permanente de las Reglas de Evidencia, Informe de las Reglas de Derecho Probatorio 96 (2007), nota 28.

v. Colón González, supra, pág. 1007(Opinión disidente del Juez Asociado Señor Estrella Martínez a la cual se unió el Juez Asociado Señor Colón Pérez).[19]

Finalmente, ser consecuente no se presume, se demuestra con las acciones. Hoy, reitero que debimos revocar el precedente de Pacheco Ruiz sin amagues e indistintamente de la etapa procesal en que nos encontremos. El mantener la presunción, aún bajo la diluida tesis de que el Ministerio Público no puede descansar únicamente en ella, y el estándar probatorio para derrotarla exclusivamente en la etapa de juicio constituye un error y por todo ello **respetuosamente disiento en parte.**

Luis F. Estrella Martínez
Juez Asociado

---

[19]Cf., Ley Núm. 168-2019, conocida como la Ley de Armas de Puerto Rico de 2020 (La licencia de armas "significa aquella licencia concedida por la Oficina de Licencias de Armas que autorice a una persona a poseer y portar armas de fuego y sus municiones"). 25 LPRA sec. 461(a)(q); (La Oficina de Licencias de Armas es la "unidad del Negociado de la Policía de Puerto Rico, encargada de todo lo relacionado a la expedición de Licencias de Armas y el Registro Electrónico". 25 LPRA sec. 461(a)(aa). Véanse, además, los Arts. 2.01-2.02 de la derogada Ley de Armas de 2000, 25 LPRA sec. ant. 456. Ver, Pueblo v. Barahona Gaitán, 201 DPR 567, 577 (2018).